917 A.2d 142

**Scott BENDER**

v.

**Steven SCHWARTZ.**

**No. 505 Sept. Term, 2006.**

Court of Special Appeals of Maryland.

March 1, 2007.

Dale A. Cooter, Washington, DC, for Appellant.

Judah Lifschitz (James D. McMichael, Bruce L. Marcus, on the brief), Greenbelt, MD, for Appellee.

Panel: MURPHY, C.J., JAMES R. EYLER, and ADKINS, JJ.

JAMES R. EYLER, Judge.

This appeal stems from a dispute between members of the Bender family, shareholders in two corporations, Blake Construction Co., Inc., a Delaware Corporation ("Blake"), and Glade Valley Farms, Inc., a Maryland corporation ("Glade Valley"), and partners in various related partnerships. Scott Bender, et al., appellants, appeal from an order of the Circuit Court for Montgomery County dismissing their shareholder derivative action filed against Steven Schwartz, et al., appellees.

## Procedural and Factual Background

Appellants are Morton Bender, four of his children (Scott, Jay, Kenneth, and Lisa Bender Feldman) and the eight Alpha Trusts controlled by Jeffrey, the fifth child, minority shareholders in Blake and Glade Valley. Blake is engaged in real estate and construction activities, and Glade Valley owns a large horse farm in Frederick County and boards, breeds, trains, and sells race horses. Both corporations are nominal appellants.

Appellees are the directors, officers, and controlling shareholders of Blake and Glade Valley: Stanley Bender, Howard Bender, Sondra Bender, David Bender, SSB, LLC (formerly Stanley S. Bender, a Blake shareholder), Stanley Prill, and Steven Schwartz. Appellees Howard Bender, Stanley Bender, David Bender, and Steven Schwartz are officers of Blake, and Stanley Prill was an officer of Blake until 2001. Howard Bender and Stanley Bender are directors of Blake. Stanley Prill was a director of Blake until his resignation on June 1, 1998. David Bender was elected a director of Blake in 2003, after the filing of this action.

Glade Valley's current directors are Howard Bender, Sondra Bender, and Dr. Robert Leonard. Stanley Prill has had no interest, position, or involvement with Glade Valley.

Appellants filed their original complaint on October 2, 2002, alleging waste of corporate assets and breach of fiduciary duty. Appellants asserted that the case should be allowed to

proceed as a shareholder derivative action without demand upon the boards of directors of Blake and Glade Valley because demand would be futile. Appellees moved to dismiss the complaint, arguing that the facts alleged were insufficient to excuse a demand on the boards of directors. After a hearing on March 11, 2003, the circuit court granted appellees' motion to dismiss, with leave to amend. Appellants did not amend in an attempt to state additional facts to show that demand should be excused.

On March 17, 2003, appellants sent a demand letter to the boards of Blake and Glade Valley, demanding that the directors investigate the allegations in the First Amended Complaint ("FAC"), attached thereto, which had not yet been filed, and bring an action against the appellees for various breaches of fiduciary duty.

The demand letter and FAC alleged that appellees had committed specific acts of corporate waste and diversions of corporate opportunities. As stated in appellants' brief, these claims included:

– Excessive salaries, benefits and fees to the [appellees].

– Causing Blake, the Partnerships and Glade Valley to enter into transactions in which [appellees] (or members of their family) were personally interested.

– Failing to adhere to Delaware and Maryland codes.

– Failing to properly respond to Scott Bender's Section 220 Action [a request for documents under the Delaware Code].

– Loaning from Blake to Glade Valley, detrimentally to Blake.

– Theft of corporate opportunities by CCSI [Contract Cleaning Services, Inc.], JIB Monitoring, and SB Construction Company.

– Theft of corporate opportunities by development projects owned by only some of Blake's shareholders.

– Using Blake employees and equipment to provide personal services to the Defendants.

– Concealing transactions.

– Use of Glade Valley by Howard and Sondra without fair compensation.

. . . .

– Placing Glade Valley in a Joint Venture with Blake.

(citations to demand letter and FAC omitted).

On April 10, 2003, appellants filed the FAC.

In May 2003, the directors of Blake and Glade Valley appointed special committees (hereinafter "Demand Committee(s)" or "Committee(s)") to investigate the allegations in the demand letter and FAC. Specifically, on May 13, 2003, Glade Valley appointed director Dr. Robert A. Leonard (one of the original shareholders of Glade Valley who retired in 2000, but who is accused of no wrongdoing), as its "disinterested" Demand Committee. On May 20, 2003, Blake elected three new directors, two of whom, Melvin J. Estrin and Richard S. Cohen, were appointed as the "disinterested" Demand Committee. Each Demand Committee was given full authority to investigate and act authoritatively on behalf of their respective corporations as to appellants' demand. Each retained independent legal counsel to assist in its investigation and report.

On May 23, 2003, appellees moved to dismiss the FAC. The circuit court held hearings on November 25, 2003 and February 19, 2004. The court determined that a further hearing would be held on the partnership claims [1] and stayed the derivative claims pending the reports of the Demand Committees.

The Glade Valley Demand Committee issued its report in April 2004 and submitted it to the court on August 17, 2004. The report was sixteen pages long with sixteen exhibits. The Blake Demand Committee issued its report in June 2004 and submitted it to the court on August 16, 2004. The report was sixty-one pages long with one hundred and eighty-four exhibits. Both reports concluded that there was no basis for the

---

1. No hearing was ever held on the partnership claims because appellants abandoned their partnership claims when they filed their second amended complaint, discussed below.

allegations in the FAC and that litigation should not be pursued.

On September 24, 2004, the circuit court entered an order that allowed appellants limited discovery into the reasonableness of the Demand Committees' investigations. On June 25, 2005, appellants filed a Second Amended Complaint ("SAC"), alleging wrongful refusal of demand.

The SAC, at issue in this appeal, contained two counts, in which appellants alleged that the Demand Committees failed to adequately investigate the allegations in the demand letter, and wrongfully refused the demand to authorize the derivative suit against appellees. Appellants also alleged that the investigations by the Demand Committees revealed other additional areas of breach of duty including excessive bond fees, the excessive payment of fifteen million dollars in life insurance premiums, and breach of duty in connection with a racing stable run by Howard and Sondra on the grounds of Glade Valley.

Appellees moved to dismiss on the grounds that (1) appellants alleged no facts showing that the Demand Committees were not independent and that the investigations were not reasonable, (2) many of the claims in the SAC were not raised in the demand letter, and (3) many of the claims alleged harm to appellants individually and were not derivative claims.

After a hearing on March 2, 2006, the circuit court, by Memorandum Opinion and Order ("Mem. Op.")dated March 28, 2006, dismissed the SAC with prejudice.

## Standard of Review

The circuit court, by agreement of the parties, decided the issues before us, not on a motion to dismiss, but under Maryland Rule 2–502, whereby:

> [i]f at any stage of an action a question arises that is within the sole province of the court to decide, . . . and if it would be convenient to have the question decided before proceeding further, the court, on motion or on its own initiative, may order that the question be presented for decision in the

manner the court deems expedient. In resolving the question, the court may accept facts stipulated by the parties, may find facts after receiving evidence, and may draw inferences from these facts. The proceedings and decisions of the court shall be on the record, and the decisions shall be reviewable upon appeal after entry of an appealable order or judgment.

A decision under Rule 2–502 is a trial on the merits, with respect to the issues decided. Thus, as in all actions tried without a jury, we shall review questions of law de novo and shall not set aside the circuit court's findings of fact unless they are "clearly erroneous." *See* Md. Rule 8–131(c).

The issues were tried on a documentary record. The underlying facts were not in dispute, but inferences to be drawn and the conclusion to be reached were in dispute. The circuit court reviewed the record and determined that: (1) the investigations by the Demand Committees were reasonable; (2) some of appellants' claims had not been presented to the Committees; and (3) some of appellants' claims were personal, not derivative, in nature. With respect to the determination of reasonableness, the circuit court applied the business judgment rule to all except three of the challenged transactions, to which it applied an entire fairness standard.

To the extent that the circuit court resolved conflicting inferences of fact, we shall defer to those factual determinations. It appears that the circuit court's ultimate conclusions were conclusions of law, however. Thus, we shall perform essentially the same function as the circuit court.

### Contentions

Appellants present the following questions for our review on appeal, as rephrased by us:

1. Did the circuit court err in concluding that (a) the Demand Committees properly utilized the business judgment test in reviewing the challenged transactions, as opposed to an entire fairness test, and (b) in applying the business judgment

rule itself, rather than the entire fairness test, to all but three of appellant's claims?

2. Did the circuit court err in finding that certain claims were not raised in the Demand Letter or the attached FAC and, therefore, did not need to be investigated by the Demand Committees?

3. Did the circuit court err in finding that the Demand Committees' investigations were reasonable?

4. Did the circuit court err in dismissing the individual claims with prejudice?

Finding no reversible error, we will affirm the judgment of the circuit court.

## Discussion

■ Substantively, a shareholder derivative suit is governed by the law of the state of incorporation. *Kamen v. Kemper Financial Serv., Inc.,* 500 U.S. 90, 108–09, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). Because Blake is a Delaware corporation, Delaware law controls its actions. Because Glade Valley is a Maryland corporation, Maryland law controls its actions.

### I. Standard for Wrongful Refusal of a Demand

■ Generally, the business and affairs of a corporation, including the decision to institute litigation, are managed under the direction of its board of directors. *Aronson v. Lewis,* 473 A.2d 805, 811 (Del.1984), *overruled on other grounds by Brehm v. Eisner,* 746 A.2d 244 (Del.2000); *Werbowsky v. Collomb,* 362 Md. 581, 598–99, 766 A.2d 123 (2001). Developed as a check on that power, the derivative form of action permits an individual shareholder or a group of shareholders to bring "suit to enforce a *corporate* cause of action against officers, directors, and third parties" where those in control of the company refuse to assert a claim belonging to it. *Kamen,* 500 U.S. at 95, 111 S.Ct. 1711 (*quoting Ross v. Bernhard,* 396 U.S. 531, 534, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970)); *see also Werbowsky,* 362 Md. at 599, 766 A.2d 123. "If the wrong alleged was committed against the stockholder

rather than the corporation, then the stockholder must bring the action as a direct action—either individually or as a representative of a class—and not as a derivative action." James J. Hanks, Jr., *Maryland Corporation Law* 268 (Aspen 2007).

Before bringing a derivative suit in Maryland or Delaware, the shareholder must either make a demand on the board of directors that the corporation bring the suit, or show that demand is excused as futile. *Kamen,* 500 U.S. at 96, 111 S.Ct. 1711; *Waller v. Waller,* 187 Md. 185, 192, 49 A.2d 449 (1946). Once a demand is made, the corporation's board of directors must conduct an investigation into the allegations in the demand and determine whether pursuing the demanded litigation is in the best interests of the corporation. *See In re Oracle Corp. Derivative Litigation,* 808 A.2d 1206, 1212 (Del. Ch.2002). The board may appoint a committee of disinterested directors to conduct this investigation. *Aronson,* 473 A.2d at 813.

If the corporation, after an investigation, fails to take the action requested by the shareholder(s) (i.e., to bring the suit), the shareholder(s) may bring a "demand refused" action. *Id.* By making a demand, the shareholder(s) "are deemed to have waived any claim they might otherwise have had that the board *cannot independently act* on the demand." *Scattered Corp. v. Chicago Stock Exchange, Inc.,* 701 A.2d 70, 74 (1997) (emphasis added). The plaintiff may still allege, however, that the board *in fact* did not act independently or that demand was wrongly refused. *Id.* at 71; *Werbowsky,* 362 Md. at 619, 766 A.2d 123.

In determining whether a demand was wrongly refused, a court reviews the board's investigation under the business judgment rule, deferring to the decision of the board or committee not to pursue litigation unless the stockholders can show either that the board or committee's investigation or decision was not conducted independently and in good faith, or that it was not within the realm of sound business judgment. *Levine v. Smith,* 591 A.2d 194, 212 (Del.1991); *Werbowsky,*

362 Md. at 620, 766 A.2d 123. See Md.Code (1999 Repl.Vol.) Corporations and Associations § 2–405.1(e) (disinterested directors are presumed to perform their duties properly). The court asks whether any rational business person could have reached that result, proceeding independently and in good faith with the best interests of the corporation in mind. *Aronson,* 473 A.2d at 812. A stockholder must show more than mere suspicions and must state a claim in particular, rather than conclusory terms. *Grimes v. Donald,* 673 A.2d 1207, 1217 (Del.1996). "The burden is on the party challenging the decision to establish facts rebutting the presumption" that the directors acted reasonably and in the best interests of the corporation. *Aronson,* 473 A.2d at 812.

▆▆▆▆▆ Appellants do not allege that any member of either Demand Committee failed to conduct the investigations independently and in good faith. Additionally, there is no allegation properly before us that Demand Committee members were not capable of acting independently.[2] Therefore, the Demand Committees' conclusions must be evaluated to determine whether the Committees' investigations were rea-

---

**2.** In appellants' original brief filed in this Court, they assert in one sentence, without citation to the extract or record, that the Glade Valley Demand Committee was not "disinterested." Appellants elaborate on this assertion in their reply brief. Appellants claim that Dr. Leonard was not independent because of his "long relationship with Howard and Sondra Bender, the other two board members of Glade Valley," including the fact that he sold his shares of stock in Glade Valley to Howard and Sondra.

Our review of the SAC reveals that appellants claimed that the Demand Committees conducted inadequate investigations. Appellants did not claim that the Committees were not independent. The SAC contained a one-sentence allegation as to Dr. Leonard, questioning his independence, but it was in the context of challenging the reasonableness of the investigation.

To the extent appellants are now claiming that the Committees were not capable of acting independently, the claim was waived by making demands on the boards. *Scattered Corp.,* 701 A.2d at 74. Moreover, the claim was not properly presented in circuit court and cannot be raised for the first time on appeal. *See* Maryland Rule 8–131(a). Finally, the claim was not properly asserted in the original brief in this Court and cannot be raised for the first time in a reply brief. The claim is not properly before us. *See* Maryland Rule 8–504(a).

sonable and whether the Committees had reasonable bases for their conclusions, i.e., within the ambit of the business judgment rule. The burden to rebut the presumption that they acted in the best interests of the corporations is on appellants. *Aronson,* 473 A.2d at 812; *see also Werbowsky,* 362 Md. at p. 618–619, 766 A.2d 123.

## II. Sufficiency of Demand Letter

Appellants contend that the circuit court erred in concluding that nine matters could not be the subject of a "wrongful refusal" action because they had not been included in the demand letter or the attached FAC. The court described the nine matters as follows.

1. Why were the Plaintiffs not offered ownership opportunities in Contract Cleaning Services, JIB, and other ventures? (Paragraphs 62, 63, 64) [3].

2. Why Howard and Stanley Bender did not seek stockholder approval for payment of bond guaranty fees paid to them? (Paragraph 67).

3. Whether Howard and Stanley Bender engaged in any analysis as to the propriety or the amount of fees before causing the payment of these fees to themselves? (Paragraph 67).

4. Whether Stanley Bender was working as an employee of Blake at the time of an interest f[r]ee Blake loan for home purchase and/or renovation? (Paragraph 70).

5. Whether Stanley Prill or Stanley Bender continued to provide service to Blake or were still an employee of Blake when Blake was paying premiums on their life insurance policies? (Paragraph 70).

6. Why Stanley Bender was continued on the active payroll of Blake through 1999 when he apparently moved to Florida in 1987. (Paragraph 71).

---

**3.** The references are to the FAC.

7. Was there available land contiguous to Glade Valley's land which was a corporate opportunity that should have been brought to the attention of the Glade Valley shareholders? (Paragraph 78).

8. Why was there no investigation of the racing stable used by others of Glade Valley assets, services or employees that were not compensated? (Paragraph 80).

9. Why was there no investigation into Dr. Leonard's stock sale to Mr. and Mrs. Bender in alleged violation of Glade Valley's Articles and By–Laws? (Paragraph 81).

Appellants claim that the standard for a demand letter is that articulated in *Allison on Behalf of General Motors Corporation v. General Motors Corp.,* 604 F.Supp. 1106 (1117) (D.Del.), *aff'd,* 782 F.2d 1026 (3rd Cir.1985).

At a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief. In most instances, the shareholder need not specify his legal theory, every fact in support of that theory, or the precise quantum of damages. Decisions as to how and on what theory the corporation will pursue wrongdoers are the proper province of the Board of Directors.

*Allison,* 604 F.Supp. at 1117. Appellant contends that, for the nine complaints that the circuit court held were not "included" in the demand, the demand letter and accompanying FAC sufficiently identified the alleged wrongdoers, described the wrongful acts and harm caused to the corporation, and requested remedial relief.

■ We agree with the circuit court that, to require investigation by the Demand Committees, appellants' claims must have been "articulated in the demand." *See Scattered,* 701 A.2d at 73. Each claim must be articulated specifically enough to give directors a fair opportunity to initiate the action requested by appellants. *Shlensky v. Dorsey,* 574 F.2d 131, 141 (3rd Cir.1978); *see also Halprin v. Babbitt,* 303 F.2d 138, 141 (1st Cir.1962). With respect to the claims listed above, appellants did not provide sufficient allegations in their

demand letter or FAC, even under the *Allison* standard, to alert the Demand Committees to the existence of appellants' claims. Appellants failed to allege the factual basis of these wrongful acts and the harm to the corporation. Each claim will be discussed in more detail in section III.

## III. Reasonableness of Investigations

Appellants contend that the circuit court erred in concluding that the Demand Committees' investigations were reasonable. Appellants argue that the Demand Committees should have applied the "entire fairness standard," rather than the business judgment standard, to each complained-of transaction. We disagree.

 The entire fairness standard, a two-pronged inquiry into fair process and fair price, is a judicial review standard. Courts differ on when it is applicable, if at all, but generally it is employed to evaluate transactions when directors are "on both sides of a transaction." *Weinberger v. UOP, Inc.,* 457 A.2d 701, 710 (Del.1983).

In all of the cases relied on by appellants, the courts examined a transaction involving interested persons or a transaction that eliminated or otherwise changed a minority shareholder's ownership interest. *See Krasner v. Moffett,* 826 A.2d 277 (Del.2003) (directors on both sides of merger transaction); *Emerald Partners v. Berlin,* 787 A.2d 85 (Del.2001) (self dealing in merger transaction); *Paramount Commc'ns Inc. v. QVC Network Inc.,* 637 A.2d 34 (Del.1994) (applied enhanced scrutiny, not entire fairness test, to transaction resulting in a change in control and defensive measures taken in response to a tender offer); *Nixon v. Blackwell,* 626 A.2d 1366 (Del.1993) (directors conflicted by limiting stock ownership and insurance plans to employee shareholders); *Aronson,* 473 A.2d 805 (self dealing); *Weinberger,* 457 A.2d 701 (minority shareholder suit attacking validity of cash-out merger between parent and subsidiary that eliminated the minority shareholders); *Gelfman v. Weeden Investors, L.P.,* 859 A.2d 89 (Del.Ch.2004) (self dealing); *Solomon v. Armstrong,* 747 A.2d 1098 (Del.Ch.1999)

(self dealing between parent and subsidiary); *Guth v. Loft, Inc.*, 5 A.2d 503 (Del.1939) (suit by corporation against its president, asserting president usurped corporate opportunity for personal gain); *Lerner v. Lerner Corp.*, 132 Md.App. 32, 750 A.2d 709 (2000) (in closely held corporation with two shareholders, minority shareholder contested reverse stock split freeze-out transaction eliminating the minority shareholder).

Appellant argues that the entire fairness standard should have been applied to all of their claims here because "[a] controlling stockholder relationship *alone* can raise an inference of improper dealing, which mandates application of the entire fairness doctrine," citing *Solomon*, 747 A.2d at 1112, n. 13. Because note 13 is not on page 1112 and has nothing to do with entire fairness, we presume that appellant is referring to note 35. Note 35 distinguishes *Solomon* from note 13 in *Citron v. E.I. Du Pont de Nemours & Co.*, 584 A.2d 490, 500 (1990), which cites "conflicting cases and suggest[s] that the parent-subsidiary or controlling stockholder relationship *alone* can raise an inference of improper dealing during a transaction." This is contrary to *Solomon's* main point in note 35, which is that "[s]elf-dealing occurs when the parent, by virtue of its domination of the subsidiary, causes the subsidiary to act in such a way that the parent receives something from the subsidiary to the exclusion of, and detriment to, the minority stockholders of the subsidiary." The *Citron* footnote deals with the question of whether, in a parent-subsidiary transaction, self-dealing requires both that the parent be on both sides of the transaction and that the parent dictate the terms of the transaction, or whether only the former is required. This issue is not relevant to appellants' claims.

 Demand Committees, as disinterested persons, are required to conduct reasonable investigations of the claims asserted in a demand letter and, in making their decisions, exercise reasonable business judgment. The courts, in judicially reviewing whether the Demand Committees conducted a reasonable investigation, apply the business judgment rule. "Reasonableness implicates the business judgment rule's re-

quirement of procedural due care; that is, whether [appellees] acted on an informed basis in rejecting [appellant's] demand." *Levine v. Smith,* 591 A.2d 194, 213 (Del.1991), *overruled on other grounds, Brehm,* 746 A.2d 244.

What is reasonable "must always turn on the nature and characteristics of the particular subject being investigated." *Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994, 1003 (1979). Courts have examined a number of factors in determining whether a demand committee's investigation was reasonable. Courts have placed special emphasis on whether committees engaged independent counsel to "guide its deliberations and to advise it." *Id.*; *see also Grafman v. Century Broad. Corp.,* 762 F.Supp. 215, 220 (N.D.Ill.1991) (applying Delaware law) (identifying use of "capable counsel" as indicia of reasonableness); *Genzer v. Cunningham,* 498 F.Supp. 682, 693 (E.D.Mich. 1980); *Rosengarten v. Int'l Tel. & Tel. Corp.,* 466 F.Supp. 817, 825 (S.D.N.Y.1979) (desirable to rely on counsel); *Brinckerhoff v. JAC Holding Corp.,* 263 A.D.2d 352, 692 N.Y.S.2d 381 (N.Y.App.Div.1999) (holding that plaintiffs raised reasonable doubt as to the reasonableness of demand committee's investigation because the committee was not represented by independent counsel but rather by an attorney who had represented the corporation in connection with the challenged transaction). Courts have also emphasized whether an investigating committee produced a report, the length of such report, and whether it documented the committee's procedures, reasoning, and conclusions. *Brinckerhoff,* 692 N.Y.S.2d at 381 (considering two-page report that failed to document committee's procedures, reasoning, and conclusions in determining that plaintiff raised reasonable doubt as to reasonableness of investigation). Courts have also looked to: (1) whether the committee properly identified the claims at issue, *Grafman,* 762 F.Supp. at 220; (2) whether the committee reviewed the testimony of or interviewed directors, officers, and employees, *Grafman,* 762 F.Supp. at 220 (noting that committee had interviewed twenty witnesses), *Genzer,* 498 F.Supp. at 684 (noting use of three hundred question-

naires and fifty-six personal interviews), *Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1003; (3) reviewed documents regarding the complained-of transactions, *Grafman,* 762 F.Supp. at 220 (noting that committee had reviewed over 20,000 documents), *Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1003; and (4) the number of times the demand committee met, *Genzer,* 498 F.Supp. at 694 (noting committee met a dozen times).

### A. Reasonableness of Blake Demand Committee's Investigation

 Appellants have contested specific items in the Blake Demand Committee's investigation, which will be addressed in detail below. First, we note that the overall procedure was reasonable. The Committee hired independent counsel and worked together with counsel in the investigation and report writing. The Demand Committee directors, and not legal counsel made the decision to forego pursuit of the demand. The Demand Committee produced a report in writing that was sixty-one pages in length, contained one hundred and eighty-four exhibits, and detailed the process utilized in the Demand Committee's investigation. The Committee properly identified the issues raised by appellants in their demand letter and responded to those issues in their written report. The Committee interviewed eleven witnesses and requested interviews with appellants, but received no response. The Committee also reviewed hundreds of documents in reference to appellants' claims, including corporate records, contracts, financial records, correspondence, and partnership and joint venture documents, among others.

### 1. Contract Cleaning Services, Inc. ("CCSI")

 CCSI was created by appellees to perform cleaning operations for Blake. Appellants challenge the Blake Demand Committee's investigation into appellants' claim that appellees usurped a corporate opportunity [4] by failing to offer

---

4. Appellants allege that the Demand Committee failed to properly investigate appellant's contentions that the defendants improperly

any of Morton Bender's children the opportunity to become shareholders of CCSI.

In appellants' FAC, appellants claimed that the creation of CCSI was a theft of a Blake corporate opportunity, and in appellants' SAC, appellants also complained that Morton Bender's children were not offered the opportunity to become shareholders in CCSI. The new claim in the SAC was not included in the demand letter or FAC.[5] Since this claim was not included in the demand letter or FAC, the Demand Committee had no obligation to investigate it.

■■■ The claim regarding any harm to Morton Bender's children is personal to them, and not a cause of action that Blake could pursue as a corporation; thus it was not a matter appropriate for a stockholder derivative action. The Demand Committee was not obligated to investigate any harm personal to appellants.

■■■ Further, the Committee did conduct a reasonable investigation into the CCSI issue. The Committee conducted interviews with Howard Bender, Steven Schwartz, and Stan-

---

usurped several corporate opportunities. Majority or controlling stockholders cannot take, for their own benefit, a business opportunity properly belonging to the corporation. *Broz v. Cellular Info. Systems, Inc.*, 673 A.2d 148, 155 (Del.1996). A "corporate opportunity" has been defined in Delaware as follows:

The corporate opportunity doctrine ... holds that a corporate officer or director may not take a business opportunity for his own if: (1) the corporation is financially able to exploit the opportunity; (2) the opportunity is within the corporation's line of business; (3) the corporation has an interest or expectancy in the opportunity; and (4) by taking the opportunity for his own, the corporate fiduciary will thereby be placed in a position inimicable to his duties to the corporation.... [A] director or officer *may* take a corporate opportunity if: (1) the opportunity is presented to the director or officer in his individual and not his corporate capacity; (2) the opportunity is not essential to the corporation; (3) the corporation holds no interest or expectancy in the opportunity; and (4) the director or officer has not wrongfully employed the resources of the corporation in pursuing or exploiting the opportunity.

*Id.*

5. The FAC merely mentions that "[t]he Plaintiffs herein, as the minority shareholders of Blake, were excluded from ownership of CCSI."

ley Prill. The committee also relied on information from counsel for Morton Bender relating to a prior matter. The Committee considered that Blake had not performed cleaning operations before the creation of CCSI, had never derived income from providing cleaning services, and that no assets or funds of Blake were used in the establishment or operations of CCSI. The Committee also considered that Morton Bender was offered an opportunity to participate as a stockholder of CCSI but declined to do so. Based on this information, the Blake Demand Committee concluded that the creation of CCSI was not theft of a corporate opportunity.

We hold that appellants failed to rebut the presumption that the Committee's investigation was reasonable and its conclusion within the realm of sound business judgment.

### 2. JIB Monitoring Services, Inc. ("JIB")

JIB was created by appellees. Appellants complain that the Demand Committee failed to reasonably investigate why JIB was not incorporated as a subsidiary of the company, or, alternatively, not offered to appellants individually. Appellants contend that the Blake Demand Committee "failed to consider objective market data, relied on the wrongdoer's representations, and critically failed to investigate whether Blake employees were used to perform services for JIB."

The Demand Committee report states that the Committee reviewed relevant documents, including financial information, and interviewed appropriate individuals. On this information, the Committee found that "no assets or funds" of Blake were used in the creation or operation of JIB. The Committee considered that "these types of services typically were not provided directly by management companies, and any funds derived from them were never a part of the operations, services, or revenues of Blake...." The Committee noted that no appellant "received any salary or benefit from JIB other than proportional distributions of profits as a shareholder," thus implying that their part in JIB did not compromise appellants' duties to Blake. The Committee also considered

that JIB's earnings never reached a "significant level" that would justify a suit against appellees.

Appellants complain that the Committee failed to consider objective market data and failed to investigate whether Blake employees were used to perform services for JIB. Appellants offered no information suggesting that Blake employees were used by JIB monitoring or what effect objective market data might have had on the Committee's conclusion. Nor was the Committee required to investigate common employees or objective market data for their investigation to be reasonable. *Brehm*, 746 A.2d at 259 (holding directors/committee responsible for considering only *"material* facts that are *reasonably available,* not those that are immaterial or out of the Board's reasonable reach").

We hold that appellants failed to rebut the presumption that the Committee's investigation was reasonable and its conclusion within the realm of sound business judgment.

Appellants' complaint that ownership of JIB was not offered to appellants individually is an individual claim inappropriate for a derivative action.

### 3. Other Ventures

Appellants argue that the changed pattern of Blake real estate development was a theft of corporate opportunity. Appellants argue that this new pattern moved from placing ownership of each building into its own partnership owned by the Blake shareholders, to development projects owned by only some of the Blake shareholders, excluding appellants. Appellants claim that the Demand Committee failed to consider whether any of Morton Bender's children were offered an opportunity to participate in these other ventures, "consistent with the historical development pattern of keeping the ownership of the building in separate partnerships which mirrored the ownership of Blake."

The Committee report stated that no assets or funds of Blake were used in the transactions. The Committee examined the percentages of ownership of various real estate

partnerships formed prior to Morton Bender's departure from Blake and found that "the percentages of ownership varied from one partnership to another and involved partners who were not even members of the Bender family or Blake shareholders." Moreover, since ownership of each building had never been in the corporation, but was, rather, in separate partnerships, Blake had no interest or expectancy in the opportunity.

 Appellees had no obligation to continue structuring their development projects in the same way they had in the past. *See* Restatement (First) of Torts § 762 (no duty to engage in business with another person), *cited in Andres v. Williams,* 405 A.2d 121, 123 (Del.1979). The Committee also took into account that at the time of his departure, Morton Bender informed Howard and Stanley Bender that he no longer wanted to participate in any joint activity with Howard and Stanley. Based on this information, the Blake Demand Committee concluded that the changed pattern of real estate development was not a theft of corporate opportunity.

We hold that appellants failed to rebut the presumption that the Committee's investigation was reasonable and its conclusion within the realm of sound business judgment.

Whether Scott Bender or any of Morton Bender's children were excluded from the opportunity to participate in these other ventures was an individual claim not suitable for derivative action.

### 4. Loans to Glade Valley

 Appellants contend that the Blake Demand Committee failed to perform a reasonable investigation into the $1.3 million Blake loaned to Glade Valley. Appellants claim that the Blake Demand Committee, in its investigation of the loan, mistakenly assumed that Blake had an ownership interest in Glade Valley.

The Committee interviewed relevant persons and examined the documentation of the loans, including both Blake and Glade Valley's financial statements. There is no evidence in

the report that the Committee relied on an assumption that Blake had an ownership interest in Glade Valley. The Committee found that as Glade Valley received those funds, they were recorded in Glade Valley's books and financial statements as a "deposit on option." The Committee noted that "deposit on option" might not have been a precise description of the funds, but concluded that the term was not "sinister or inappropriate." The Committee considered that Glade Valley's office manager and CPA agreed that the term "arose from a general understanding that if Glade Valley were ever sold, Blake would have the first option to buy Glade Valley. . . ." Appellee Schwartz confirmed that "Blake advanced those funds in express anticipation of a future joint venture between Blake and Glade Valley to pool their land and sell it for development."

The Committee considered that the loans were repaid in a timely fashion. The Committee found no evidence to support appellants' claim that the advances were concealed.

The Committee noted that both Glade Valley and Blake benefited from this arrangement. Glade Valley got needed cash for operations, and Blake received an equity interest in the joint venture when it was formed,[6] "an interest that the Demand Committee found was expressly contemplated by both parties when the funds were advanced." This statement makes clear that the Demand Committee did not mistakenly believe that Blake had an ownership interest in Glade Valley at the time of the initial loans, but rather, believed that the loans were made in anticipation of an equity interest in Glade Valley when the joint venture was later formed. Upon this information, the Demand Committee found that Blake's investment in Glade Valley had a reasonable business purpose.

---

6. Appellants point out that the Committee Report mistakenly stated that "Blake received an equity position in Glade Valley when the joint venture was formed," when Blake actually received an equity interest in the joint venture. An equity interest in the joint venture was nonetheless a benefit to Blake and does not change the Committee's evaluation or rebut the presumption that the Blake Demand Committee's investigation was reasonable.

We hold that appellants failed to rebut the presumption that the Blake Demand Committee's investigation was reasonable and its conclusion within the realm of sound business judgment.

### 5. Bond Guaranty Fees

Appellants argue that the Demand Committee did not inquire into whether shareholder approval was required when Howard and Stanley Bender caused bond guaranty fees to be paid to them as the sole directors and managers of Blake.

The Blake Demand Committee reviewed financial records of all compensation of appellants, including salary, benefits, and bond indemnity guarantee fees. The Committee interviewed representatives of the accounting firm and officers and directors of Blake. The Committee reviewed the details of the bond guaranty fees, including why they were paid and how the amount was determined. The Committee found that the fees were reasonable and well within the range of reasonable compensation for companies of comparable size. Appellees also point out that the bond indemnity guarantees were critical to Blake's continued operation in the construction industry and that Howard and Stanley Bender were risking their personal wealth in providing the guarantees. Appellants do not actually state how these bond guaranty fees were unfair to the minority.

For these reasons, we find that appellants failed to rebut the presumption that the Demand Committee's investigation was reasonable and its conclusion within the realm of sound business judgment. *See Brehm*, 746 A.2d at 263 ("a board's decision on executive compensation is entitled to great deference. It is the essence of business judgment for a board to determine if 'a particular individual warrant[s] large amounts of money' ") (quoting *Grimes*, 673 A.2d at 1215).

### 6. Loans to Senior Executives

Appellants contend that the Blake Demand Committee failed to conduct a reasonable investigation into the purpose of advancing millions of dollars for the personal uses of

Stanley Bender, David Bender and Steven Schwartz. Appellants complain that the Demand Committee did not inquire into whether Stanley Bender was "working as an employee" of Blake at the time the funds were advanced to him, citing 8 Del.Code § 143 (providing that a corporation may make loans to officers and employees). Appellants also argue that the Demand Committee did not adequately investigate whether each loan could "reasonably be expected to benefit the corporation," as required by § 143.

The Demand Committee's investigation on the loan issue was reasonable. The Demand Committee reviewed financial records and conducted interviews with representatives of the accounting firm as well as officers and directors of Blake. The Demand Committee concluded that all loans were appropriately disclosed in the financial statements. The Committee also concluded that the funds were used "for the purposes stated and/or for working capital purposes, and that the transactions were in the best interest of Blake." Noting that all loans were repaid in full, the Schwartz loan with interest, the Committee concluded that neither Blake nor its shareholders were harmed by the loans.

The Committee found that the purpose of these loans was executive compensation, noting that it was the practice of Blake prior to Morton Bender's departure to advance funds to its officers to provide financing for the purchase or construction of their homes.

As to whether Stanley Bender was a Blake employee at the time of the loan, the report states that Stanley was executive vice president of Blake when the loans were made in 1985. Appellant's brief contends that this statement does not answer whether Stanley was "actually a working employee of Blake when the loans were made." Appellant, however, provided no evidence that Stanley was not a "working employee or officer," or explain why his position as an executive vice president would not qualify him as an employee or officer under the Delaware Code. Appellants do not specifically allege any harm to Blake from these loans.

We hold that appellants failed to rebut the presumption that the Demand Committee's investigation was reasonable and its conclusion within the realm of sound business judgment. *See Brehm,* 746 A.2d at 263 ("a board's decision on executive compensation is entitled to great deference. It is the essence of business judgment for a board to determine if 'a particular individual warrant[s] large amounts of money' ") (*quoting Grimes,* 673 A.2d at 1215).

### 7. Split Dollar Life Insurance Policies

██ Appellants allege that the Demand Committee's investigation was unreasonable in finding that the split-dollar life insurance trusts, whose premiums are paid by Blake, were appropriate compensation to Howard (and Sondra) Bender, Stanley Bender, and Stanley Prill. Appellants argue that these insurance premiums are essentially loans that will not be paid back until the insured dies, at which time the insurance pays back the loan without interest. Appellants claim that the Demand Committee failed to investigate whether the insurance premiums had a business purpose, "i.e., whether Stanley or Stanley Prill were current employees." Appellant complains that the insurance premiums are an "annual drain on Blake's cash flow which benefits only selected shareholders."

The Committee conducted a lengthy review of financial records, interviews with representatives of the accounting firm as well as officers and directors of Blake. The Committee concluded that the compensation, including the split-dollar life insurance policies was not excessive and was "well within the range of reasonable compensation for companies of comparable size." The Committee noted that Blake would receive repayment of the premiums paid, without interest, upon the death of the insured. The Committee concluded that the premiums were appropriate and not excessive.

We hold that appellants failed to rebut the presumption that the Committee's investigation was reasonable and its conclusion within the realm of sound business judgment. *See Brehm,* 746 A.2d at 263 ("a board's decision on executive compensation is entitled to great deference. It is the essence

of business judgment for a board to determine if 'a particular individual warrant[s] large amounts of money' ") (*quoting Grimes,* 673 A.2d at 1215) (additional quotation marks omitted).

### 8. Activity of Stanley Bender

 Appellants argue that the Blake Demand Committee failed to reasonably investigate why Stanley Bender was continued on the active payroll of Blake through 1999 when he apparently moved to Florida in 1987.

Appellants failed to make this claim in their demand letter and FAC. Appellants merely complained that compensation to controlling shareholders and directors generally was so excessive as to constitute waste. This was not sufficiently specific to require the Demand Committee to investigate Stanley Bender's recent activities. *See Shlensky,* 574 F.2d at 141 (complaint must be articulated specifically enough to give directors a fair opportunity to initiate the action requested by appellants); *Halprin,* 303 F.2d at 141.

### 9. Delaware Section 220 Request

 Appellants challenge the reasonableness of the Blake Demand Committee's investigation into whether proper documentation was provided to Scott Bender pursuant to his demand under 8 Del.Code § 220. Appellants complain that of the 1,876 pages of documents provided to Scott Bender, 1,385 were tax returns. Appellants also complain that the Committee took "Schwartz's word for it that all documents 'to which Scott Bender was entitled' had been produced," without requiring further documentation. Appellants allege that "the limited documents produced pursuant to the § 220 demand contain sparse information about the entities that have taken corporate opportunities from Blake, and with very limited exception, no information about the ownership of those entities."

These claims do not allege harm to the corporation and therefore are not appropriate for a shareholder derivative action. As noted in appellees' brief and in the circuit court's

opinion, 8 Del.Code § 220(c) provides appellants with remedies in the Delaware Court of Chancery if they are dissatisfied with the corporation's response to their § 220 demand.

Further, the Demand Committee did investigate whether Scott Bender had received the information to which he was entitled and found that Blake had sent copies of its annual financial statements and tax returns to Morton Bender to distribute to the other appellants. Although appellants allege generally that the Committee should not have relied on Stephen Schwartz's word, appellants do not articulate a reason why such reliance was unreasonable. Nor do appellants specify any particular documents to which they were entitled that appellees withheld from them or what documentation the Committee should have requested.

Accordingly, we hold that appellants failed to rebut the presumption that the Demand Committee's investigation was reasonable and its conclusion within the realm of sound business judgment.

### B. Reasonableness of Glade Valley Demand Committee Investigation

Appellants allege that the Glade Valley Demand Committee's (Dr. Leonard's) investigative procedures were generally unreasonable.

First, Appellants claim that Dr. Leonard failed to understand that Glade Valley had other owners besides Howard and Sondra Bender. The only evidence appellants offer of this misunderstanding is that in Dr. Leonard's deposition, he referred to Howard and Sondra Bender as the "owners" of Glade Valley. Appellants, however, concede that Dr. Leonard did "at times acknowledge that the Plaintiffs were 'shareholders,'" thus indicating that Dr. Leonard understood that Plaintiffs, as shareholders, were also "owners" of Glade Valley.

Second, Appellants claim, citing no evidence, but presumably relying on a deposition, that Dr. Leonard failed to read the FAC until after his Demand Committee Report was completed. Appellants' SAC claims that this shows that the

entire investigation was performed by Stanley Reed, counsel for the Committee. The Demand Committee was entitled to rely on independent counsel to investigate and advise. Without more, this allegation is not sufficient to rebut the presumption that the Glade Valley Demand Committee's investigation was reasonable.

 The Glade Valley Demand Committee hired independent counsel and worked with counsel to produce a written report. The report was sixteen pages long and included sixteen attachments. The Committee identified the concerns in appellants' demand letter and addressed those concerns. The Committee interviewed six witnesses, including the CPA who prepared Glade Valley's financial statements, the attorney who provided Glade Valley with legal assistance, and officers and directors of Glade Valley. The Committee also met with counsel for appellants and requested interviews with appellants, but received no response. The Committee reviewed numerous documents regarding appellants' claims, including tax returns and financial statements for the past six years, other financial records, corporate books and records and documents relating to the formation of the Glade Valley Joint Venture (the "Joint Venture"). All of these procedures support the conclusion that the Glade Valley Demand Committee's investigation was reasonable.

### 1. Availability of Contiguous Land

Appellants complain that the Glade Valley Demand Committee failed to investigate reasonably whether the availability of the land contiguous to Glade Valley was a corporate opportunity that should have been brought to the attention of all the shareholders of Glade Valley.

The Committee did investigate this allegation and did so reasonably. The Committee's report notes that the allegations in the FAC that Howard and Sondra Bender had initially purchased the adjoining property were false and that Blake had purchased the adjoining property in 1986 and 1989. Accordingly, the Committee had no reason to believe that the

adjoining property was available or was a corporate opportunity.

The Committee also looked to the minutes of a June 20, 2002 shareholders meeting where the majority shareholders defeated the minority shareholders and approved the joint venture. The minutes of that meeting are attached to the Committee's report. They indicate that appellants were present at the meeting and expressed their disapproval of the joint venture, but that Morton Bender's motion not to participate in the joint venture was defeated by a vote of 75,000 shares to 12,000. Because a shareholder meeting was held on the matter, appellant's claim that shareholders should have been notified has no merit.

We hold that appellants have failed to rebut the presumption that the Committee's investigation was reasonable and its conclusion within the realm of sound business judgment.

## 2. Decline In Horsing Industry

Appellants argue that the Glade Valley Demand Committee's investigation was unreasonable regarding why the corporation continued to operate as a horse farm despite that Dr. Leonard opined that the horse business was in decline. Appellants suggest that the horse farm was continued only to satisfy Howard and Sondra's equestrian "hobby."

The Glade Valley Demand Committee found that there was a rational business purpose in operating the land as a horse farm. The Committee considered that the farm had been operated for over forty years and was still considered "one of the premier horse farm operations in Maryland." The Committee noted that horse farms, like other agricultural businesses are, by nature, cyclical and uncertain. The Committee also pointed out that Glade Valley's operations were profitable from 1998–2003. The Committee noted that Morton Bender's motion to shut down farming operations at the June 20, 2002 shareholders meeting was defeated.

The Demand Committee further investigated whether the horse farm was continued only to support Howard and Son-

dra's hobby and concluded that Glade Valley had always been operated as a business. The Committee viewed financial statements and tax returns, noting that they had been prepared by reputable firms. The Committee stated that books and records appeared to have been kept accurately and that corporate formalities were observed throughout Glade Valley's existence.

We hold that appellants failed to rebut the presumption that the Demand Committee's investigation was reasonable and its conclusion within the realm of sound business judgment.

### 3. B & B, LLC, Racing Stable

 Appellants contend that the Demand Committee failed to reasonably investigate whether B & B, LLC, an entity owned by Howard and Sondra Bender, used Glade Valley assets or made appropriate compensation to Glade Valley.

First, appellants failed to include this allegation in their demand letter and attached FAC. Appellants argue that they could not have known about the separate entity in advance of their demand. Nevertheless, the Demand Committee cannot have been required to investigate an allegation not articulated in the demand.

Second, the Demand Committee did address B & B, LLC to some extent. The Demand Committee pointed out in its report that Glade Valley's current General Manager is paid entirely by B & B, LLC even though approximately a one-third to one-half of his time is devoted to the operation of Glade Valley. This would imply that, contrary to appellant's complaint, Glade Valley is actually benefiting from B & B, whether or not B & B is using Glade Valley assets.

### 4. Sale of Dr. Leonard's Stock

 Appellants contend that the Demand Committee failed to make a reasonable investigation into whether Dr. Leonard's sale of stock to Howard and Sondra Bender, without first offering it to all shareholders, violated Glade Valley's

Articles and By–Laws and constituted evidence of a conflict of interest creating a reasonable doubt as to whether Dr. Leonard could independently and reasonably review the Demand Letter's assertions with regard to Howard and Sondra.

Appellants did not complain of this stock sale in the demand letter and FAC. Thus, the Demand Committee was not obligated to investigate. Further, this right is personal to appellants, and not appropriate for a derivative suit.

Regarding appellants' argument that the stock sale creates a reasonable doubt as to whether Dr. Leonard was independent, appellants failed to raise that argument below in their SAC and cannot now raise it for the first time on appeal.[7]

### 5. Joint Venture Percentage Ownership

Appellants claim that the Demand Committee's investigation was unreasonable in failing to assess whether the relative percentages of ownership in the Glade Valley Joint Venture were appropriate as to Glade Valley.

The Demand Committee Report expressly addressed this contention. The Report stated that the

appraisals ... prepared by NBValuation Group, Inc. ("NBV") establish that Glade Valley's contribution consisted of 551.02 acres, while Blake contributed 331.98 acres. In exchange, each received a specified percentage ownership interest in the Joint Venture. The value of the respective properties were established by NBV utilizing the Uniform Standards of Professional Appraisal Practice ("USPAP"), taking into consideration that each property was the subject of a proposed assembly with the other; and that the "long-term plan for the [properties] is for large scale residential development."

Further, Exhibit A to the joint venture agreement, attached as Exhibit 12 to the Glade Valley Demand Committee Report, specified that the percentages of interest in the joint venture were determined proportionally to the appraised value of each

---

7. *See* footnote 2, *supra.*

party's contribution to the joint venture (57.3% to Glade Valley and 42.7% to Blake, respectively).

Further, appellants' contention that Sondra Bender caused Glade Valley to enter the joint venture agreement without the knowledge of Dr. Leonard is without merit. Glade Valley held a stockholders meeting on June 20, 2002, at which a majority of shareholders voted to engage in the joint venture. Dr. Leonard was not in attendance at that meeting but it was a shareholders meeting, and Dr. Leonard was not a shareholder. Appellants, however, offer no explanation of how Dr. Leonard's lack of participation is relevant to the Demand Committee's investigation.

Accordingly, appellants failed to rebut the presumption that the Committee's investigation was reasonable, and its conclusion within the realm of sound business judgment.

### 6. "Unanimous" Written Consents in Lieu of Annual Meetings

Appellants allege that the Demand Committee failed to conduct a reasonable investigation into why the "Unanimous" Written Consents in Lieu of the 1999 and 2000 Annual Meetings were not signed by appellants Scott Bender, Lisa Bender, or the Alpha Trusts. Appellants do not assert any direct or derivative claim with this point, but rather offer it as evidence of the Demand Committee's failure to conduct a reasonable investigation generally. As this is not a claim that the corporation could assert, but is rather an individual shareholder claim, the Demand Committee was not obligated to investigate this issue and any failure to do so does not cast reasonable doubt upon the remainder of the Committee's investigation.

### C. Reasonableness of Committees' Investigation

For the reasons above, appellants have failed to rebut the presumption of reasonableness of either Demand Committee's investigation. Therefore, under the business judgment rule, we must defer to the Committees' conclusions and affirm the circuit court's dismissal of the derivative action with prejudice.

## IV. Dismissal of Individual Claims

■■■ Appellants argue that the circuit court should not have dismissed with prejudice their individual claims, as identified above. Appellants contend that, to the extent the court concluded that these claims were individual and not derivative, the court should have granted leave to amend, "as requested in their Opposition to Defendant's Motion to Dismiss Second Amended Complaint."

Appellants failed to request leave to amend in the court below. Appellants' Opposition to Defendant's Motion to Dismiss Second Amended Complaint states that "to the extent that the Court determines that some of the claims assert 'individual' rather [than] 'derivative' claims, they are not subject to the demand requirement anyway, and should be allowed to proceed." By agreement, the parties proceeded under Maryland Rule 2–502. At no time in the court below did appellants request leave to amend their complaint to assert individual claims. Therefore, the circuit court's failure to grant leave to amend was not error.

Further, the circuit court properly dismissed appellants' individual claims with prejudice because of their lack of substantive merit. Appellants argue that the circuit court improperly relied on *Malone v. Brincat,* 722 A.2d 5 (Del.1998) (holding that Delaware law does not require directors to provide shareholders with information concerning the finances of the corporation absent a request for shareholder action), but do not offer any theory under which appellants could successfully recover for their individual claims. Although a minority shareholder may maintain a direct claim when he or she is individually harmed, such as in a freeze-out of minority shareholders or a merger or sale of corporate assets, appellants assert no such viable theory of recovery here. *See, e.g., Smith v. Van Gorkom,* 488 A.2d 858 (Del.1985) (shareholder action requesting rescission of cash-out merger); *Lerner,* 132 Md.App. at 53, 750 A.2d 709 (shareholder action seeking rescission of reverse stock split "freezing out" minority shareholders). Instead, appellants, citing no authority, claim that

appellees (1) had a fiduciary duty to offer all stockholders the opportunity to participate in various ventures outside the corporation and (2) had a fiduciary duty to inform them of the availability of contiguous land. Appellants cite no cases, and we have found none, that support an individual cause of action upon any of the facts stated by appellants. Their claims are outside the duties of majority shareholders and directors to minority shareholders. Accordingly, the trial court correctly dismissed appellants' individual claims with prejudice.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**