*Howard Nathanson, et al. v. Tortoise Capital Advisors, LLC, et al.*, No. 370, Sept. Term 2024.  Opinion by Arthur, J.

**CORPORATIONS—SHAREHOLDER DERIVATIVE ACTIONS**

Under Maryland law, before a shareholder may bring a derivative action on behalf of a corporation, the shareholder ordinarily must make a demand upon the board of directors to bring the action.  Under a "very limited exception" to this rule, a shareholder may be excused from this requirement if the shareholder can "clearly demonstrate, in a very particular manner," that "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule."  *Werbowsky v. Collomb*, 362 Md. 581, 620 (2001).

In this case, shareholders sued derivatively, on behalf of two investment funds, against an advisory firm and the directors for the funds.  The shareholders alleged that the defendants engaged in reckless practices that caused the funds to incur investment losses.  The shareholders argued that the directors were too conflicted to consider a demand and had demonstrated by their conduct that they were committed not to pursue any recovery.

The shareholders' allegations did not satisfy the narrow futility exception under Maryland law.  Naming directors as defendants, establishing that directors face potential personal liability, or establishing that directors may lack insurance coverage does not suffice to show futility.  Analysis of futility generally does not permit courts to consider the merits of the underlying claims.  Allegations that rest on speculation about the directors' motives are insufficient to meet the pleading standard.  Shareholders may not use a defendant's hostile response to the suit to demonstrate that a pre-suit demand would have been futile.  Collectively, the allegations here did not clearly demonstrate with particularity that the directors were so personally and directly conflicted or committed to decisions in dispute that they could not reasonably be expected to consider a demand in good faith and within the scope of the business judgment rule.

**STATUTE OF LIMITATIONS—TOLLING**

The statute governing the supplemental jurisdiction of the United States district courts includes a tolling provision that must be applied in state courts.  This statute provides that the "period of limitations for any claim asserted" under the supplemental jurisdiction of a United States district court "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed[.]"  28 U.S.C. § 1367(d).  This provision does not require a dismissal on one of the grounds mentioned in the same Code section.  Accordingly, 28 U.S.C. § 1367(d) requires tolling where a plaintiff asserts both federal claims and supplemental state-law claims in a United States district court and the district court subsequently dismisses the action on the ground of forum non conveniens.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 370

September Term, 2024

_____

HOWARD NATHANSON, ET AL.

v.

TORTOISE CAPITAL ADVISORS, LLC, ET AL.

_____

Arthur,
Tang,
Meredith, Timothy E.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed: August 28, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from a shareholder derivative action. Under Maryland law, before a shareholder may bring a derivative action on behalf of a corporation, the shareholder ordinarily must make a demand upon the board of directors to bring the action. Under a "very limited exception" to this rule, a shareholder may be excused from this requirement if the shareholder can "clearly demonstrate, in a very particular manner," that "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky v. Collomb*, 362 Md. 581, 620 (2001).

In this case, two shareholders brought suit derivatively, on behalf of two investment funds, against an advisory firm and against the directors for the investment funds. The shareholders alleged that the defendants engaged in reckless borrowing practices that caused the investment funds to lose more than $1 billion of value in early 2020. The shareholders argued that they were excused from the demand requirement because any demand upon the directors would have been futile.

The Circuit Court for Baltimore City dismissed the derivative action, concluding that the shareholders failed to demonstrate that they were excused from the pre-suit demand requirement. The shareholders have appealed to this Court. For the reasons explained in this opinion, the judgment will be affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal arises from the dismissal of a complaint, the following factual summary is based on the allegations made in the complaint. *See, e.g.*, *RRC Northeast,*

*LLC v. BAA Maryland, Inc.*, 413 Md. 638, 644 n.1 (2010).

### A. **Investment Losses in Early 2020**

Tortoise Energy Infrastructure Corp. (TYG) and Tortoise Midstream Energy Fund, Inc. (NTG), are Maryland corporations that operate as closed-end investment companies.[1] Both companies hold equity securities in the energy industry, including interests in companies that gather, process, store, or transport natural gas. A five-member Board of Directors manages the two companies. The same five persons have served as the Directors for both companies continuously since 2018. Throughout this case, the parties have referred to TYG and NTG collectively as "the Funds."

Tortoise Capital Advisors, L.L.C. ("Tortoise"), is a Delaware limited liability company that operates as an investment advisory firm. Under a series of advisory contracts, Tortoise managed the day-to-day operations of the Funds and controlled the investment portfolios owned by the Funds. Tortoise collected management fees calculated as a percentage of the Funds' total assets, including assets acquired through leverage.

Under the management of Tortoise, the Funds increased their total assets through various borrowing methods, using a combination of credit facilities, senior notes, and preferred shares. These borrowing instruments required the Funds to maintain specified levels of net assets relative to the amounts borrowed. If the Funds violated these asset-coverage requirements, the Funds would need to pay down some of their outstanding

---

[1] "TYG" and "NTG" are the stock ticker symbols used by the two companies.

debt.

In public filings, the Funds represented that their policy was to use leverage representing approximately 25% of their total assets on average. The Funds also represented that their leverage ratios normally would range between 20% and 30% of total assets. Nevertheless, by 2017, the Funds' leverage ratios exceeded 30% of total assets. By the end of 2019, Tortoise had increased the Funds' leverage ratios to nearly 40% of total assets.

In February 2020, energy prices fell sharply as a result of the COVID-19 pandemic and a pricing dispute between Russia and the Organization of the Petroleum Exporting Countries (OPEC). The falling energy prices triggered a liquidity crisis for the Funds, which lacked sufficient cash to pay down their outstanding debt to meet their asset-coverage requirements. Tortoise responded by selling most of the securities owned by the Funds at a loss. By the end of March 2020, TYG allegedly reported losses of $572 million, reflecting a decline of nearly 84% of its net assets. At the same time, NTG allegedly reported losses of $520 million, reflecting a decline of 74% of its net assets.

In November 2020, the Board renewed the Funds' advisory contracts with Tortoise on the same terms as the prior contracts. At the time of the renewal, the Board stated that it considered Tortoise's "handling of the leverage target" to be "responsible" and that it considered the Funds' performance to be "reasonable" under the management of Tortoise.

At the end of 2020, the Funds reported realized losses of more than $1 billion. Although other comparable investment funds also declined during 2020, the Funds

3

performed significantly worse, declining several times more than the average decline for comparable funds during that period.

### B. Derivative Action in the U.S. District Court for the District of Kansas

On August 18, 2022, Gus Gordon, a shareholder of TYG, and Howard Nathanson, a shareholder of NTG, filed a complaint in the United States District Court for the District of Kansas.[2] The two shareholders brought suit derivatively, on behalf of the Funds, against Tortoise and against each of the five Directors for the Funds.

In their federal complaint, the shareholders asserted one count for rescission of the Funds' advisory contracts with Tortoise. The shareholders alleged that the advisory contracts were voidable on the ground that Tortoise's conduct violated the federal Investment Advisers Act of 1940. The shareholders further asserted that the Funds were entitled to rescissionary damages.

Along with their claim under the Investment Advisers Act, the shareholders asserted one count for breach of fiduciary duty under Maryland law. The shareholders alleged that the Directors and Tortoise breached their fiduciary duties by making misrepresentations about the Funds' use of leverage and by recklessly managing the Funds' use of leverage. The shareholders alleged that this conduct caused the Funds to incur hundreds of millions of dollars of investment losses in early 2020. The shareholders sought compensatory damages from Tortoise and from the Directors.

Under the Federal Rules of Civil Procedure, a shareholder derivative complaint

---

[2] According to the shareholders, the Funds list an address in Kansas as their business address, and Tortoise maintains its principal place of business in Kansas.

4

must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . .; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). In their federal complaint, the shareholders asserted that, under Maryland law,[3] they were excused from making a pre-suit demand because any demand would be futile. The shareholders asserted that one of the Directors, Howard Birzer, also served as an executive for Tortoise and, therefore, could not claim to be independent or disinterested. The shareholders alleged that the other Directors had demonstrated that they lacked the capacity to fairly consider a litigation demand.

Tortoise and the Directors moved to dismiss the federal complaint on multiple grounds. The defendants contended that the bylaws for TYG and NTG required the shareholders to bring their action in Maryland. The defendants also contended that the shareholders failed to establish that they were excused from the requirement of making a pre-suit demand upon the Board. In addition, the defendants contended that the shareholders failed to state a claim upon which relief could be granted, either under the Investment Advisers Act or under Maryland law.

The Funds, as nominal defendants to the derivative action, joined the motions to dismiss in part. The Funds asked the court to dismiss the action either on grounds of forum non conveniens or based on the failure to make a pre-suit demand. The Funds

---

[3] In shareholder derivative actions, courts apply the substantive law of the state of incorporation. *Bender v. Schwartz*, 172 Md. App. 648, 665 (2007) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991)).

declined to take any position on the merits of the shareholders' substantive claims.

On February 1, 2023, the district court dismissed the federal complaint without prejudice. *Nathanson v. Tortoise Capital Advisors, L.L.C.*, No. 2:22-cv-02328-HLT-RES, 2023 WL 1434292 (D. Kan. Feb. 1, 2023) (unreported). The court concluded that the forum-selection provisions in the bylaws of TYG and NTG were enforceable and applicable to the action. *Id.* at *4. Those provisions designate the Circuit Court for Baltimore City as the exclusive forum for certain actions, including derivative actions on behalf of the Funds and actions alleging a breach of a duty owed by a director of the Funds. The court noted that there was no "dispute[] that an adequate alternative forum exists in Maryland." *Id.* at *5. The court dismissed the action under the doctrine of forum non conveniens and declined to decide any other issues raised in the motion to dismiss. *Id.*

Meanwhile, before the filing of the federal action, an attorney representing a third-party investment manager had sent a letter asking the Board to discuss potentially purchasing the Funds' claims against Tortoise in exchange for a payment and a share of any proceeds.[4] The Board responded to the proposal in March 2023, shortly after the dismissal of the federal action. The Board rejected the proposal, stating that it had determined that it was not in the best interests of the Funds to pursue an assignment of the claims.

---

[4] According to the defendants, the attorney who sent the proposal also serves as counsel for the shareholders.

## C.     Derivative Action in the Circuit Court for Baltimore City

On May 12, 2023, Mr. Gordon and Mr. Nathanson initiated the present action by filing a complaint in the Circuit Court for Baltimore City.  The two shareholders again brought suit derivatively, on behalf of the Funds, against Tortoise and against the five Directors.

The complaint included many of the same factual allegations made in the federal action, along with updated and additional allegations.  As they did in their federal complaint, the shareholders asserted one count for rescission of the advisory contracts and one count for breach of fiduciary duty.  The shareholders again sought compensatory damages, alleging that Tortoise and the Directors recklessly managed the Funds' use of leverage and caused the Funds to lose more than $1 billion of value in early 2020.  The shareholders again asserted that they were excused from making a pre-suit demand because any such demand would be futile.

By an amended complaint filed in November 2023, the shareholders added a new count alleging that Tortoise and the Directors committed gross negligence.  The shareholders brought the gross-negligence claims directly against Tortoise and the Directors, not as derivative claims on behalf of the Funds.[5]

---

[5] The original complaint in the circuit court also included a claim seeking to rescind certain provisions of amended bylaws enacted by the Funds in October 2020. The shareholders alleged that the amended bylaws diminished shareholder voting rights in violation of the Investment Company Act of 1940 (ICA), 15 U.S.C. §§ 80a-1 to 80a-64.  The amended complaint also included a request for a declaratory judgment stating that the amended bylaws violated the ICA.  The shareholders voluntarily dismissed those counts after a federal district court in a separate case issued an order rescinding certain provisions from the amended bylaws.

All defendants moved to dismiss the amended complaint. Collectively, the defendants advanced three separate grounds for dismissal. First, the defendants argued that Maryland's three-year statute of limitations barred the shareholders' claims. In this regard, the defendants asserted that the shareholders did not file their complaint in the circuit court until May 2023, more than three years after the Funds reported a sharp decline in value in February 2020. Second, the defendants argued that the derivative claims should be dismissed based on the failure to make a pre-suit demand. The defendants argued that the allegations were insufficient to establish that the shareholders were excused from the demand requirement. Third, the defendants argued that each count of the amended complaint failed to state a claim upon which relief could be granted.

Opposing the motions to dismiss, the shareholders contended that their action was timely and that all counts stated viable causes of action. The shareholders acknowledged that they filed their original complaint in the circuit court more than three years after the Funds suffered a sharp decline in value in February 2020. The shareholders nevertheless invoked 28 U.S.C. § 1367(d), which provides that the "period of limitations for any claim asserted" under the supplemental jurisdiction of a federal district court "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed[.]" The shareholders argued that this provision suspended the running of the statute of limitations for more than five months, during the pendency of the federal action, plus 30 days after the dismissal of that action. On that basis, the shareholders argued that their claims were

8

timely.[6]

In opposition to the motions to dismiss, the shareholders further contended that they had the right to pursue derivative claims under the futility exception to the pre-suit demand requirement. The shareholders argued that the Directors were incapable of considering a demand because they faced the potential for unexculpated personal liability for alleged damages exceeding hundreds of millions of dollars. The shareholders further argued that the Directors had demonstrated through their conduct that they were committed to a decision not to pursue any recovery on behalf of the Funds. The shareholders pointed to the following alleged conduct of the Directors: the Board "repeatedly rehired" Tortoise after the Funds collapsed in value and "stated . . . that Tortoise's 'handling of the leverage target' was 'responsible'" when it renewed the advisory contracts; in October 2020, the Board enacted amended bylaws, which, according to the shareholders, were intended to insulate the Directors from shareholder control; the Board sought dismissal of the Kansas action and "publicly" stated that the shareholders' claims were "'meritless'" in filings in the Kansas action; and the Board first ignored, and then ultimately rejected, a proposal to assign the Funds' claims to a third party in exchange for a cash payment and a share of any proceeds.

---

[6] The shareholders asserted that the statute of limitations was further tolled by an agreement in which the defendants had agreed to suspend the statute of limitations from April 19, 2023, until May 12, 2023. The additional 23 days, however, were immaterial to the issue of whether the statute of limitations had already expired months before the date of the tolling agreement.

## D.     Dismissal of the Amended Complaint

The circuit court considered the motions to dismiss the amended complaint at a hearing on February 16, 2024.  At the end of the hearing, the court announced that it would dismiss all counts with prejudice and without leave to amend.

In its oral ruling, the court explained that it considered only the amended complaint and two documents mentioned in the amended complaint: the complaint filed in the United States District Court for the District of Kansas and the order dismissing that complaint.  The court stated that it did not consider any other extraneous materials, such as exhibits offered in support of or in opposition to the motions.

The court first considered whether the claims were timely under the three-year statute of limitations.  The court noted that the amended complaint alleged that the Funds reported a sharp decline in value at the end of February 2020.  The court concluded that the shareholders' claims accrued "no later than" February 29, 2020.  The court noted that the amended complaint included "no statement" as to why the statute of limitations "may have been tolled" for any claims.  The court reasoned, therefore, that it appeared from the face of the pleadings that the statute of limitations had expired before the shareholders filed their original complaint in Maryland on May 12, 2023.  The court stated that the amended complaint "could be dismissed" "on that basis alone[.]"

Next, the court considered the shareholders' argument that 28 U.S.C. § 1367(d) suspended the statute of limitations while their previous action was pending in federal court.  That provision states, in pertinent part, that "[t]he period of limitations for any claim asserted" under the supplemental jurisdiction of a United States district court "shall

10

be tolled while the claim is pending and for a period of 30 days after it is dismissed[.]" 28 U.S.C. § 1367(d).

The court reasoned that the count for rescission of the advisory contracts did not qualify for tolling under 28 U.S.C. § 1367(d) because it was a federal claim asserted under the original jurisdiction of the district court, not a state-law claim asserted under the supplemental jurisdiction of the district court. The court reasoned that the count for gross negligence did not qualify for tolling under 28 U.S.C. § 1367(d) because the shareholders had not expressly asserted any claim for gross negligence in the federal action. The court concluded, therefore, that those counts should be dismissed with prejudice based on the statute of limitations.

The court concluded that the remaining count, alleging breach of fiduciary duty, could qualify for tolling under 28 U.S.C. § 1367(d). The court observed that the shareholders previously asserted their state-law claims for breach of fiduciary duty in federal district court, along with a federal claim under the Investment Advisers Act. The court observed that the language of the statute purports to provide for tolling whenever a supplemental claim is "dismissed[,]" regardless of the basis for the dismissal. The court concluded that, if permitted to amend their pleadings, the shareholders could set forth the additional facts establishing that 28 U.S.C. § 1367(d) tolled the statute of limitations for their breach-of-fiduciary-duty claims and, thus, that those claims were timely.

Next, the court analyzed whether the allegations in the amended complaint were sufficient to establish the futility of a pre-suit demand. The court observed that, under Maryland law, shareholders generally must make a demand upon the board of directors

11

before they may bring a derivative action on behalf of the corporation. As the court explained, Maryland recognizes a "very limited exception" to the demand requirement. *See Werbowsky v. Collomb*, 362 Md. 581, 620 (2001). Under that exception, the demand requirement may be excused "when the allegations or evidence clearly demonstrate, in a very particular manner," that "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Id*.

The court stated that, under this exception, the demand requirement will not be excused "simply because a majority of the directors approved or participated in some way in the challenged transaction[,]" or "on the basis of generalized or speculative allegations that they are conflicted[,]" or "because they are paid well[,] . . . [or] because they are chosen as directors at the behest of controlling stockholders, or . . . would be hostile to the action." The court remarked that other courts applying the *Werbowsky* standard "have pretty much eliminated every other reason" that might establish demand futility "except for self-dealing." The court noted that the shareholders did not allege self-dealing in their pleadings.

The court observed that other courts applying *Werbowsky* have concluded that demand is not excused merely because the directors are named as defendants in the action, or face the potential of personal liability, or may lack insurance coverage. The court concluded, therefore, that the shareholders could not establish futility by alleging that the Directors faced the potential of unexculpated personal liability. The court further

12

observed that courts have interpreted the *Werbowsky* standard to "disallow[] consideration of the merits of the case in analyzing demand futility." On that basis, the court concluded that the shareholders could not establish futility by alleging that the Directors made misstatements to investors and violated their fiduciary duties. The court also stated that it would disregard any "conclusory" allegations asserting that the Board had already demonstrated that it would not pursue any recovery, reasoning that these allegations were "not specific" enough to satisfy the pleading standard.

The court reviewed each of the factual allegations listed in the amended complaint purportedly to demonstrate that the Board was incapable of considering a litigation demand. These allegations included the following conduct by the Board: rehiring Tortoise after the collapse of the Funds' value in early 2020, publicly describing Tortoise's management of the Funds as "responsible[,]" enacting amended bylaws, seeking dismissal of the federal action, characterizing the shareholders' claims in the federal action as "meritless[,]" and ignoring or rejecting a third-party offer to discuss potentially purchasing the Funds' claims. The court reasoned that these allegations were either inadequate to establish demand futility or not specific enough to satisfy the *Werbowsky* pleading standard.

Accordingly, the court concluded that the amended complaint failed to establish that demand should be excused under the futility exception. Because the court determined that the claims should be dismissed based on the failure to make pre-suit demand, the court concluded that any "amendment to fix the statute of limitations issues" for the breach-of-fiduciary-duty claim would be ineffective.

13

On February 16, 2024, the circuit court entered orders granting the motions to dismiss and dismissing the amended complaint with prejudice. The shareholders filed a timely notice of appeal to this Court.

### E. Post-Judgment Developments

On April 2, 2024, a few weeks after the circuit court dismissed the derivative action, the shareholders sent a demand letter to the Board. The letter set forth in detail the shareholders' allegations that Tortoise and the Directors breached their fiduciary duties. The shareholders demanded that the Board appoint a committee made up of independent and disinterested directors to investigate the alleged breaches of fiduciary duty. The shareholders demanded that the Board "take all necessary actions to obtain recovery for harm to the Funds" and "pursue appropriate legal remedies against the responsible parties, including causing the Funds to initiate litigation or authorizing [the] [s]hareholders to initiate litigation on behalf of the Funds."

By letter dated August 24, 2024, counsel for the Board's Demand Review Committee rejected the demand. The letter stated that a Demand Review Committee made up of disinterested and independent directors had completed the investigation with the assistance of independent counsel. The letter also stated that the Committee had concluded that the Funds do not have viable claims against Tortoise or the Directors and had recommended that the Funds should not pursue those claims.

On November 22, 2024, the shareholders initiated a separate derivative action by filing a complaint in the Circuit Court for Baltimore City. The shareholders raised a single count against Tortoise and against the five Directors for breach of fiduciary duty.

14

The factual allegations of the new complaint were substantially the same as the allegations from the earlier pleadings. The new complaint, however, replaced the section titled "Demand Futility Allegations," with a new section titled "Derivative and Wrongful Demand Refusal Allegations." The shareholders alleged that the Board's refusal of the litigation demand was not a legitimate exercise of business judgment and should be set aside so that the shareholders could pursue the claims on behalf of the Funds.[7]

## DISCUSSION

In this appeal, the shareholders contend that the circuit court erred when it granted the defendants' motions to dismiss. The shareholders argue that the allegations in their pleadings were sufficient to establish that they were excused from making a pre-suit demand upon the Board. The shareholders ask this Court to reverse the judgment and to reinstate the derivative claims against Tortoise and the Directors for breach of fiduciary duty.[8]

In their appellate brief, the shareholders present the following questions:

1. Did the trial court reversibly err in departing from settled precedent in *Werbowsky v. Collomb*, 362 Md. 581 (2001), by ruling that demand futility can be shown only where the company faces immediate harm or a plaintiff alleges a majority of directors engaged in self-dealing, and disregarding allegations that the directors could not reasonably consider a demand because they would face material, personal liability in any action brought against them and had demonstrated their commitment to the acts and

---

[7] As of the date of this opinion, the separate derivative action alleging the wrongful refusal of the shareholders' demand remains pending as *Howard Nathanson et al. v. Tortoise Capital Advisors, L.L.C., et al.*, No. C-24-CV-24-004103 in the Circuit Court for Baltimore City.

[8] The shareholders do not challenge the dismissal of the count for rescission of the advisory contracts or the count for gross negligence.

15

decisions at issue through after-the-fact entrenchment and opposition to such an action?

2. Did the trial court reversibly err when it departed from established pleading standards by failing to consider Appellants' allegations as a whole and drawing inferences in favor of Appellees when evaluating whether Appellants had adequately alleged demand futility?

3. Did the trial court reversibly err in ruling that Count II is barred by the statute of limitations absent supplemental allegations that the limitations period was tolled during the pendency of a federal action asserting the same claim?

The defendants filed three appellate briefs: one on behalf of Tortoise and Mr. Birzer, the Director affiliated with Tortoise; one on behalf of the four Directors who are independent from Tortoise; and one on behalf of the Funds, as nominal defendants. All defendants contend that the circuit court was correct when it dismissed the derivative action based on the failure to make pre-suit demand. Alternatively, the defendants argue that the demand issue is now moot because, after the dismissal of the derivative action, the shareholders made a demand upon the Board and the Board rejected it. In addition, the defendants argue that the circuit court should have dismissed the claims based on the expiration of the three-year statute of limitations.

As the circuit court did, we will begin by addressing the timeliness of the action under the statute of limitations. Afterwards, we will address whether the shareholders sufficiently demonstrated that they were excused from making a pre-suit demand upon the Board. Ultimately, we agree with the circuit court that, although the claims for breach of fiduciary duty are timely, this derivative action does not qualify under the narrow futility exception to the demand requirement.

## I.      Statute of Limitations

In general, this Court reviews a ruling on a motion to dismiss a complaint to determine whether the ruling was legally correct, without deference to the circuit court. *See Caruso Builder Belle Oak, LLC v. Sullivan*, 489 Md. 346, 361 (2025).  When deciding a motion to dismiss, the court must assume the truth of the facts alleged in the complaint, as well as all factual inferences that may reasonably be drawn in favor of the plaintiff.  *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 643 (2013).  Accordingly, "'[a] motion to dismiss ordinarily should not be granted . . . on the [ground] that the cause of action is barred by the statute of limitations unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run.'"  *Caruso Builder Belle Oak, LLC v. Sullivan*, 489 Md. at 361 (quoting *Litz v. Maryland Dep't of Env't*, 434 Md. at 641).

Under Maryland's default statute of limitations, a "civil action at law" must be filed "within three years from the date it accrues" unless another statute provides a different limitations period.  Md. Code (1974, 2020 Repl. Vol.), § 5-101 of the Courts and Judicial Proceedings Article.  Generally, a civil claim accrues when the plaintiff knew or through the exercise of reasonable diligence should have known of the facts giving rise to the claim.  *See, e.g.*, *Windesheim v. Larocca*, 443 Md. 312, 326-27 (2015).  In this appeal, the shareholders take no issue with the circuit court's determination that the three-year limitations period for the breach-of-fiduciary-duty claims began on or before February 29, 2020.  For their part, the defendants have not argued that the claims accrued at an earlier date.

17

The parties disagree on whether a subsequent event—the filing of the derivative action in federal district court in Kansas—suspended the running of the statute of limitations. On August 18, 2022, with several months remaining in the three-year limitations period, the same shareholders sued the same defendants in the United States District Court for the District of Kansas. In that action, the shareholders asserted one count for rescission of the advisory contracts under federal law and one count for breach of fiduciary duty under Maryland law. The district court dismissed the entire action without prejudice on February 1, 2023, under the doctrine of forum non conveniens. No party appealed from the dismissal order. Three months after the dismissal, on May 12, 2023, the shareholders initiated the present action in the Circuit Court for Baltimore City, reasserting the derivative claims against the defendants for breach of fiduciary duty.[9]

The shareholders contend that a federal statute, 28 U.S.C. § 1367(d), tolled the statute of limitations for their breach-of-fiduciary-duty claims while those claims were

_____

[9] Maryland Rule 2-101(b) permits a party to refile claims in the circuit court within 30 days after certain dismissals. This provision applies when a party brings an action "in a United States District Court or a court of another state within the period of limitations prescribed by Maryland law" and that court dismisses the action "(1) for lack of jurisdiction, (2) because the court declines to exercise jurisdiction, or (3) because the action is barred by the statute of limitations required to be applied by that court[.]" *Id.* The Rule states that, in those designated circumstances, "an action filed in a circuit court within 30 days after the entry of the order of dismissal" is treated as timely. *Id.* This Court has stated that, when "a court with jurisdiction to hear a case . . . dismisses the case on the ground of *forum non conveniens*, that is indisputably an instance of 'the court's declin[ing] to exercise jurisdiction.'" *Antar v. Mike Egan Ins. Agency, Inc.*, 209 Md. App. 336, 354 n.7 (2012). In the present case, the shareholders cannot rely on Md. Rule 2-101(b) because they filed their complaint in the circuit court more than 30 days after the dismissal of the federal action. Even though the parties entered into a tolling agreement on April 19, 2023, the agreement did not take effect until more than 30 days after the dismissal of the federal action.

18

pending in federal district court and for 30 days after the dismissal of those claims. On that basis, the shareholders argue that the statute of limitations had not expired when the shareholders initiated the present action.

Generally, federal district courts "'are courts of limited jurisdiction.'" *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). By statute, a United States district court has original jurisdiction over limited categories of civil actions, including actions arising under federal law and suits between citizens of different states where the amount in controversy exceeds the statutory minimum. *See* 28 U.S.C. §§ 1331, 1332(a)(1). In addition, 28 U.S.C. § 1367(a) grants the district court supplemental jurisdiction over state-law claims that are sufficiently related to an action within the court's original jurisdiction.

Subsection (a) of section 1367 provides that, in an action over which the district court has original jurisdiction, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Subsection (b) imposes certain restrictions on the exercise of supplemental jurisdiction where the court's original jurisdiction is based solely on diversity of citizenship. Subsection (c) authorizes the court to decline to exercise supplemental jurisdiction under any of the following circumstances: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court

19

has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

At issue in this appeal is subsection (d), which requires tolling of any statute of limitations when a plaintiff asserts state-law claims under the supplemental jurisdiction of the district court. This subsection states:

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d).

Congress first enacted 28 U.S.C. § 1367 as part of the Judicial Improvements Act of 1990. Before this enactment, the United States Supreme Court had held that, in actions arising under federal law, district courts could exercise jurisdiction over state-law claims "if the federal and state law claims 'derive from a common nucleus of operative fact[.]'" *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 539 (2002) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). The Court held that this exercise of jurisdiction is proper where the relationship between the federal and state-law claims "permits the conclusion that the entire action before the court comprises" a single "'case'" within the meaning of Article III, section 2, of the United States Constitution. *United Mine Workers of America v. Gibbs*, 383 U.S. at 725. Congress enacted 28 U.S.C. § 1367 with the intention "to codify (and, to some extent, modify) existing case law" regarding the scope of supplemental jurisdiction. *Turner v. Kight*, 406 Md. 167, 173 (2008). In crafting this legislation, Congress "appreciat[ed] that '[s]upplemental

20

jurisdiction has enabled federal courts and litigants to . . . deal economically—in single rather than multiple litigation—with related matters.'" *Artis v. District of Columbia*, 583 U.S. 71, 75 (2018) (quoting H.R. Rep. No. 101-734, at 28 (1990)).

The tolling provision of section 1367(d) is "intended to 'eliminate[] a serious impediment to access to the Federal courts on the part of plaintiffs pursuing federal and state law claims that derive from a common nucleus of operative facts.'" *Turner v. Kight*, 406 Md. at 185 (quoting *Jinks v. Richland County, S.C.*, 538 U.S. 456, 463 (2003)) (further citation and quotation marks omitted). Absent a tolling provision, limitations would continue to run while a state-law claim is pending as a supplemental claim in federal district court. Consequently, if a district court dismissed a supplemental claim without prejudice after the limitations period, the dismissal would have the same effect as a dismissal with prejudice. *See Artis v. District of Columbia*, 583 U.S. at 76 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 352 (1988)). "This consequence may work injustice to the plaintiff: although [the plaintiff] has brought [the] suit in timely manner," the claims nevertheless are "time barred[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. at 352.

"To prevent the limitations period" for supplemental claims "from expiring while the plaintiff was fruitlessly pursuing them in federal court, § 1367(d) provides a tolling rule that must be applied by state courts[.]" *Jinks v. Richland County, S.C.*, 538 U.S. at 459. This provision suspends the running of any state statute of limitations (i.e., "stop[s] the clock") from the time when a supplemental claim is filed in a federal district court until 30 days after the court dismisses the supplemental claim. *Artis v. District of*

21

*Columbia*, 583 U.S. at 75; *see Raygor v. Regents of Univ. of Minn.*, 534 U.S. at 542 (stating that, where subsection (d) applies, "it w[ill] toll the state statute of limitations for 30 days in addition to however long the claim had been pending in federal court"); *Turner v. Kight*, 406 Md. at 189 (concluding that "§ 1367(d) serves to suspend the running of a State statute of limitations from the time the State-law claim is filed in U.S. District Court until 30 days after . . . a final judgment is entered by the U.S. District Court dismissing the [supplemental] State-law claims").

Before the enactment of section 1367, plaintiffs pursuing federal claims along with related state-law claims faced a choice between "unattractive options[.]" *Jinks v. Richland County, S.C.*, 538 U.S. at 463. Plaintiffs "could file a single federal-court action," but they "would run the risk that the federal court would dismiss the state-law claims after the limitations period had expired[.]" *Id.* Plaintiffs "could file a single state-law action, which would abandon their right to a federal forum[.]" *Id.* Or plaintiffs "could file separate, timely actions in federal and state court and ask that the state-court litigation be stayed pending resolution of the federal case," but doing so "would increase litigation costs with no guarantee that the state court would oblige." *Id.* "Section 1367(d) replaces this selection of inadequate choices with the assurance that state-law claims asserted under § 1367(a) will not become time barred while pending in federal court." *Id.* at 463-64. This provision "promotes fair and efficient operation of the federal courts" by "providing a straightforward tolling rule in place of th[e] regime" that existed

before its enactment.  *Id*. at 463.[10]

Under the language of 28 U.S.C. § 1367(d), claims must be "asserted under subsection (a)" to qualify for tolling.  *See Rounds v. Maryland-Nat'l Capital Park & Planning Comm'n*, 441 Md. 621, 661 (2015) (holding that, "[u]nder 28 U.S.C. § 1367(d), 'in order to benefit from tolling, the claim must have been expressly asserted in federal court'") (quoting *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703, 722 (N.D. Ohio 2010), *aff'd*, 719 F.3d 474 (6th Cir. 2013)).  In the present appeal, the defendants have not disputed that the breach-of-fiduciary-duty claim was a "claim asserted under subsection (a)" of section 1367.

As the basis for subject matter jurisdiction, the federal complaint cited 28 U.S.C. § 1331, which grants the district courts original jurisdiction over actions arising under federal law.  The federal complaint did not mention 28 U.S.C. § 1367(a), which provides supplemental jurisdiction over state-law claims that are related to an action within the court's original jurisdiction.  Nevertheless, the court and all parties recognized that the claims for breach of fiduciary duty arose under Maryland law, not federal law.  As the district court explained, the shareholders had asserted "[o]ne claim aris[ing] under federal securities law, and [an]other claim aris[ing] under Maryland law."  *Nathanson v. Tortoise*

---

[10] As summarized by Justice John Paul Stevens, "[s]ubsection (d) of § 1367 responds to the risk that the plaintiff's state-law claim, even though timely when filed as a part of the federal lawsuit, may be dismissed after the state period of limitations has expired."  *Raygor v. Regents of Univ. of Minn.*, 534 U.S. at 550 (Stevens, J., dissenting).  The tolling provision "avoid[s] the necessity of duplicate filings[.]"  *Id.*  At the same time, any "impact of this provision on the defendant is minimal, because the timely filing in federal court provides [the defendant] with the same notice as if a duplicate complaint had also been filed in state court."  *Id.*

*Capital Advisors, L.L.C.*, 2023 WL 1434292, at *4 (D. Kan. Feb. 1, 2023) (unreported).

In opposition to the motion to dismiss the federal complaint, the shareholders argued that the district court had "supplemental jurisdiction over the state-law claim" under 28 U.S.C. § 1367(a). In response, the defendants argued that the court should "decline to exercise supplemental jurisdiction over the state law claim" under 28 U.S.C. § 1367(c). By asking the court to decline to exercise supplemental jurisdiction, the defendants acknowledged that the shareholders had "asserted" that claim under subsection (a).

In addition to the requirement that a claim be "asserted" under subsection (a), subsection (d) measures the tolling effect in relation to when the claim is "dismissed[.]" In pertinent part, it states that "[t]he period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is *dismissed*[.]" 28 U.S.C. § 1367(d) (emphasis added). As the circuit court observed, this language purports to require tolling without regard for the reasons for the dismissal. In this appeal, the shareholders contend that subsection (d) "does not render tolling contingent on the nature of the dismissal[.]" The shareholders argue, therefore, that the statute requires tolling when a district court dismisses both federal claims and supplemental state-law claims under the doctrine of forum non conveniens.

Without question, the language of subsection (d) covers the district court's dismissal of the state-law claims for breach of fiduciary duty. The shareholders "asserted" those claims under the court's authority to exercise supplemental jurisdiction, and the district court "dismissed" those claims. The United States Supreme Court has

24

explained: "On its face, subsection (d) purports to apply to dismissals of '*any* claim asserted under subsection (a).'" *Raygor v. Regents of Univ. of Minn.*, 534 U.S. at 542 (emphasis in original). "Thus," subsection (d) "could be broadly read to apply to any claim technically 'asserted' under subsection (a) as long as it was later dismissed, regardless of the reason for dismissal." *Id.*

On the other hand, the Court has noted that "§ 1367(d) occurs in the context of a statute that specifically contemplates only a few grounds for dismissal." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. at 545. A claim may be subject to dismissal under the statute "if it fails to 'form part of the same case or controversy' as a claim within the district court's original jurisdiction[,]" as required by subsection (a); "if exercising jurisdiction over [the claim] would be 'inconsistent'" with the diversity jurisdiction statute, as stated in subsection (b); or in one of the "four specific situations in which a district court may decline to exercise supplemental jurisdiction over a particular claim" under subsection (c). *Id.* "Given that particular context," the Court has remarked that "it is unclear if the tolling provision was meant to apply to dismissals for reasons unmentioned by the statute[.]" *Id.*

Although the *Raygor* Court identified two possible interpretations of 28 U.S.C. § 1367(d), one broad and one narrow, the Court ultimately did not adopt either one. The plaintiffs in the *Raygor* case had initially sued "an arm of the State of Minnesota" in federal district court, raising employment discrimination claims under both federal law and state law. *Id.* at 536-37. The district court dismissed all claims based on the State's immunity under the Eleventh Amendment. *Id.* at 537. The plaintiffs refiled their state-

law claims in a Minnesota state court, which proceeded to dismiss those claims based on the expiration of the statute of limitations. *Id.* at 538.

Upholding the dismissal, the United States Supreme Court concluded that 28 U.S.C. § 1367(d) did not toll the statute of limitations when the federal district court dismissed the supplemental state-law claims on the ground of Eleventh Amendment immunity. *Id.* at 542-46. The Court reasoned that "reading subsection (d) to apply when state law claims against nonconsenting States are dismissed on Eleventh Amendment grounds" would "raise[] serious doubts about the constitutionality of the provision given principles of state sovereign immunity." *Id.* at 542. Because the statute expressed "no specific or unequivocal intent to toll the statute of limitations for claims asserted against nonconsenting States," the Court held that the tolling provision does not "apply to dismissals of claims against nonconsenting States dismissed on Eleventh Amendment grounds." *Id.* at 545-46.

The holding of *Raygor* is expressly limited to claims against a state. *See id.* at 547 (stating that the Court "express[ed] no view on the application . . . of § 1367(d) . . . when a defendant is not a State"). One year after that decision, the Court declined to extend the holding of *Raygor* where the defendant was "not a State, but a political subdivision of a State[.]" *Jinks v. Richland County, S.C.*, 538 U.S. at 466. The Court explained: "Although we held in *Raygor* . . ., that § 1367(d) does not apply to claims filed in federal court against *States* but subsequently dismissed on sovereign immunity grounds, we did so to avoid interpreting the statute in a manner that would raise 'serious constitutional doubt' in light of our decisions protecting a *State's* sovereign immunity from

26

congressional abrogation[.]" *Id.* (emphasis in original) (quoting *Raygor v. Regents of Univ. of Minn.*, 534 U.S. at 543). In the decades since *Raygor* and *Jinks*, the Court still has not settled whether 28 U.S.C. § 1367(d) should be interpreted as written, to apply to dismissals on virtually any ground, or whether it should be construed narrowly, to include only dismissals under that particular Code section. *See generally* 13D *Wright & Miller's Federal Practice and Practice & Procedure* § 3567.4 (4th ed. 2023).

No party to this appeal has cited any authority addressing whether 28 U.S.C. § 1367(d) tolls the statute of limitations for a supplemental claim when a federal district court dismisses an action on grounds of forum non conveniens. Several courts outside of Maryland, however, have decided a related issue. Appellate courts in the District of Columbia, Florida, and Michigan have held that § 1367(d) tolls the statute of limitations for a supplemental claim when a federal district court dismisses an action for lack of federal subject matter jurisdiction. *Stevens v. ARCO Mgmt. of Washington, D.C., Inc.*, 751 A.2d 995, 998 (D.C. 2000); *Krause v. Textron Fin. Corp.*, 59 So. 3d 1085, 1091 (Fla. 2011); *Foley v. Azam*, 257 So. 3d 1134, 1139 (Fla. Dist. Ct. App. 2018); *Scarfo v. Ginsberg*, 817 So. 2d 919, 920-21 (Fla. Dist. Ct. App. 2002); *Puetz v. Spectrum Health Hosps.*, 919 N.W.2d 439, 448 (Mich. Ct. App. 2018). Those courts have uniformly rejected the notion that the tolling effect of 28 U.S.C. § 1367(d) is restricted to dismissals under that section.[11]

---

[11] An appellate court in Arizona concluded that 28 U.S.C. § 1367(d) does not toll the statute of limitations for supplemental claims when a federal district court dismisses an action for lack of subject matter jurisdiction. *Morris v. Giovan*, 242 P.3d 181, 184 (Ariz. Ct. App. 2010). The Arizona court believed that the *Raygor* opinion dictated this

27

Statutory language is the primary reason why courts have concluded that tolling under 28 U.S.C. § 1367(d) is not contingent on the ground for the dismissal. Subsection (d) "provides that its tolling provision applies to 'any claim asserted under subsection (a).'" *Puetz v. Spectrum Health Hosps.*, 919 N.W.2d at 447 (quoting 28 U.S.C. § 1367(d)). Subsection (d) "does not, by its terms, bar the application of the tolling provision" when a claim is dismissed on grounds other than those mentioned within the same section. *Krause v. Textron Fin. Corp.*, 59 So. 3d at 1090. "[T]he language of subsection (d) . . . does not condition its application to discretionary dismissals under subsection (c)." *Stevens v. ARCO Mgmt. of Washington, D.C., Inc.*, 751 A.2d at 998. Moreover, the tolling provision does not purport to "require a *successful* assertion of federal jurisdiction." *Id.* (emphasis in original); *see also Foley v. Azam*, 257 So. 3d at 1139. The only express requirement is "that the claim be *asserted* under section 1367(a)." *Scarfo v. Ginsberg*, 817 So. 2d at 921 (emphasis in original).

A few federal trial courts have adopted a narrow construction of 28 U.S.C. § 1367(d), concluding that tolling occurs only when a district court declines to exercise jurisdiction over a supplemental claim on one of the grounds mentioned in subsection (c). *See Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F.

---

result. According to that court: "it follows that if § 1367(d) does not apply in an action dismissed on constitutional grounds, so, too, it should not apply in an action dismissed for lack of a federal question." *Id.* at 183. In our assessment, the reasoning of *Morris v. Giovan* is unconvincing. "[W]ithout citing legal authority, the *Morris* court presumed that the same constitutional concerns" that exist when a claim is dismissed based on Eleventh Amendment immunity also "were present when a case is dismissed for [lack] of subject-matter jurisdiction." *Puetz v. Spectrum Health Hosps.*, 919 N.W.2d at 446.

Supp. 2d 1009, 1019 (C.D. Cal. 2011); *Parrish v. HBO & Co.*, 85 F. Supp. 2d 792, 797 (S.D. Ohio 1999). The primary basis for that conclusion is certain language found in the legislative history of the statute. A report recommending the adoption of section 1367 describes the tolling provision as follows: "Subsection [(d)] provides a period of tolling of statutes of limitations for any supplemental claim that is dismissed under this section[.]" H.R. Rep. No. 101-734, at 30 (1990). Citing that statement, some courts have reasoned that "Congress did not intend the phrase 'the dismissal' to include dismissal of the supplemental state law claim by *any* procedure but, rather, dismissal pursuant to § 1367(c) only." *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d at 1019 (emphasis in original) (citing *Parrish v. HBO & Co.*, 85 F. Supp. 2d at 796).[12]

As others have observed, the language from the House Report suggesting a "'limitation on the type of dismissals . . . (i.e., dismissal "under this section") did not find its way into the statute.'" *Blinn v. Florida Dep't of Transp.*, 781 So. 2d 1103, 1107 (Fla. Dist. Ct. App. 2000) (quoting Patrick D. Murphy, *A Federal Practitioner's Guide to Supplemental Jurisdiction Under 28 U.S.C. § 1367*, 78 Marq. L. Rev. 973, 1033 (Summer 1995)). To construe the tolling provision to be limited to dismissals under that section "would be to add words to the statutory text in the belief that some textually unspoken 'legislative intent' so required[,]" even though Congress failed to "indicate[]

---

[12] Although the House Report accurately states that subsection (d) provides tolling for any supplemental claim dismissed under that section, the Report does not state that tolling occurs *only* if a claim is dismissed under that section.

29

such a purpose anywhere in the text actually adopted." *Scarfo v. Ginsberg*, 817 So. 2d at 921.

Courts that have rejected a narrow construction of 28 U.S.C. § 1367(d) have reasoned that "[a]pplying the statute as written is . . . in line with Congress's intent when enacting the statute." *Puetz v. Spectrum Health Hosps.*, 919 N.W.2d at 447. A narrow construction of the tolling provision "would work against judicial efficiency[,]" because it "would tend to compel prudent federal litigants who present state claims to file duplicative and wasteful protective suits in state court." *Stevens v. ARCO Mgmt. of Washington, D.C., Inc.*, 751 A.2d at 1002. "[G]iving subsection (d) its straightforward meaning and applying it to any claim asserted," without an additional requirement concerning the basis for the dismissal, "enhances sound principles of judicial economy." *Id.* "Such an interpretation obviates the necessity of filing a purely protective action in a state court to forestall the possibility that the asserted federal claim supporting the supplemental jurisdiction might, for some reason, be dismissed[.]" *Id.*

Without an assurance of tolling, plaintiffs who face some possibility of dismissal outside the limitations period, on one ground or another, would confront the same "inadequate choices" available before the enactment of section 1367: undertaking the risk that the state-law claims might become time barred, abandoning the federal forum altogether, or filing duplicative lawsuits at their expense. *See Jinks v. Richland County, S.C.*, 538 U.S. at 463-64. Just as a plaintiff asserting supplemental claims faces the risk that the district court might decline to exercise supplemental jurisdiction over the state-law claims, the plaintiff also faces a risk that the district court might dismiss the entire

30

action for lack of federal subject matter jurisdiction or under the doctrine of forum non conveniens. Plaintiffs cannot compel the district court to base a dismissal decision on one ground as opposed to another. From the plaintiff's perspective, therefore, the need to bring a placeholder lawsuit in state court would not depend on the ground for the potential dismissal. The present case offers a useful illustration. Absent a tolling guarantee, a plaintiff in the shareholders' position, facing the threat of a dismissal without prejudice of supplemental state-law claims, might need to rush to file duplicate claims in state court within a dwindling limitations period.

In our assessment, the appellate opinions concluding that tolling under 28 U.S.C. § 1367(d) does not require a dismissal on one of the grounds mentioned in the same section are persuasive. This "straightforward" interpretation of the tolling provision (*Stevens v. ARCO Mgmt. of Washington, D.C., Inc.*, 751 A.2d at 1002) is not only faithful to the enacted language but also consistent with the purposes of the legislation. Just as courts have concluded that the tolling provision applies when a federal district court dismisses an action for lack of subject matter jurisdiction, we conclude that the tolling provision should also apply when the district court dismisses an action on the ground of forum non conveniens.

In their briefs, the defendants propose additional restrictions not found in the language of 28 U.S.C. § 1367(d). The defendants argue that tolling should occur only if the federal district court orders a "merits-based dismissal[]" of the federal claims and then declines to exercise supplemental jurisdiction over a state-law claim. In their view, the tolling provision should not apply here because the district court "dismissed the entire

31

action on procedural grounds[.]"

As support for this purported distinction between a "merits-based" dismissal or a dismissal on procedural grounds, the defendants selectively quote dicta from *Cain v. Midland Funding, LLC*, 475 Md. 4 (2021). The plaintiff in that case contended that the statute of limitations for his claims against a consumer debt buyer had been tolled while he was a putative member of an earlier class action in federal district court. *Id.* at 53. The Court concluded that the statute of limitations had been tolled under Maryland's cross-jurisdictional tolling doctrine. *Id.* at 69. In light of that conclusion, the Court declined to address an alternative argument that 28 U.S.C. § 1367(d) also provided tolling. *Id.* at 69-70. The Court stated: "Given our holding that Maryland recognizes cross-jurisdictional class action tolling, we do not need to determine whether the federal supplemental jurisdiction statute, § 1367(d), applies to later filed individual claims after a non-merits dismissal of class action certification." *Id.* at 70. In a footnote, the Court added that *Artis v. District of Columbia*, 583 U.S. 71 (2018), the leading opinion to analyze the meaning of § 1367(d), "does not address the applicability of the supplemental jurisdiction statute to a non-merits dismissal of class action certification." *Cain v. Midland Funding, LLC*, 475 Md. at 70 n.31.

Contrary to the defendants' arguments, *Cain* neither holds nor suggests that the tolling under 28 U.S.C. § 1367(d) requires a "merits-based dismissal[]." The *Cain* opinion merely identified an unresolved issue: the existing precedent did not address how 28 U.S.C. § 1367(d) might apply where the plaintiff previously participated as a putative class member of a class action, which was dismissed by a federal district court. This

32

observation might have some significance here if the shareholders were seeking to apply § 1367(d) based on their participation as putative members in a class action in federal district court. The present circumstances have nothing to do with prior participation in a class action.

In one of the appellate briefs, some defendants argue that, in order for 28 U.S.C. § 1367(d) to provide tolling, "there must be . . . an earlier action in which a federal court *exercised* federal supplemental jurisdiction" over substantially the same state-law claims. (Emphasis added.) Those defendants argue that the tolling provision should not apply here because, in their view, the district court "did *not* exercise supplemental jurisdiction over [the shareholders'] breach of fiduciary duty claim[s]" when it dismissed those claims on inconvenient forum grounds. (Emphasis in original.)

The theory that 28 U.S.C. § 1367(d) applies only after a federal district court "exercise[s]" supplemental jurisdiction prior to a dismissal lacks support in the statutory language or case law. The tolling provision includes no requirement that the district court must first "exercise" jurisdiction over a state-law claim, whatever that requirement might entail. As the defendants themselves recognize, it is beyond dispute that subsection (d) of section 1367 requires tolling when the district court "decline[s] to exercise" supplemental jurisdiction on one of the grounds listed in subsection (c). *E.g.*, *Artis v. District of Columbia*, 583 U.S. at 77; *Turner v. Kight*, 406 Md. at 169-70. Accordingly, an additional requirement that tolling necessitates some "exercise" of supplemental jurisdiction would make little sense.

At oral argument in this case, the defendants acknowledged the lack of authority

holding that 28 U.S.C. § 1367(d) denies tolling when a district court dismisses an action on forum non conveniens grounds. The defendants nevertheless cited *Holt v. County of Orange*, 91 F.4th 1013 (9th Cir. 2024), in support of their position. In that opinion, the Ninth Circuit held that a plaintiff's "voluntary dismissal of a supplemental state-law claim does not trigger tolling under § 1367(d)." *Id.* at 1019.[13] The court relied on the "'well settled'" principle that "a voluntary dismissal generally does not toll the statute of limitations for the dismissed claims for the period during which those claims were pending." *Id.* at 1020 (quoting 9 *Wright & Miller's Federal Practice and Procedure* § 2367 (4th ed. 2023)). The court was "unwilling to conclude that § 1367(d) abrogated such an entrenched legal rule absent a clear indication that Congress meant to do so." *Id.*

For similar reasons, the *Holt* court held that a dismissal of a supplemental claim on the ground of improper joinder does not trigger the tolling effect of 28 U.S.C. § 1367(d). *Id.* at 1021. The court reasoned that, "as with voluntary dismissals, it is well established that dismissal of a party for improper joinder does not toll the statute of limitations for the period that party's claims were pending before the dismissal." *Id.* The court reasoned "that § 1367(d) does not abrogate this settled rule just as it does not abrogate the rule that claims are not tolled by voluntary dismissals." *Id.*

The reasoning of *Holt* is inapplicable to circumstances in which a district court dismisses an action under the doctrine of forum non conveniens. The defendants have

---

[13] Other courts have concluded that a 28 U.S.C. § 1367(d) does provide tolling upon a voluntary dismissal of a supplemental claim. *Blinn v. Florida Dep't of Transp.*, 781 So. 2d at 1108; *Naragon v. Dayton Power & Light Co.*, 934 F. Supp. 899, 902 (S.D. Ohio 1996).

not identified any principle, well-settled or otherwise, which forbids tolling when a court dismisses a claim on inconvenient forum grounds. Thus, interpreting subsection (d) to include this type of dismissal does not require the abrogation of any entrenched principle. Tolling under those circumstances poses no conflict with the policies underlying the forum non conveniens doctrine, because any forum non conveniens dismissal presupposes that the plaintiff may reinstate the claims in an "alternative forum." *See, e.g.*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). Indeed, when the defendants asked the district court for a dismissal on inconvenient forum grounds, they asserted: "This case, if brought at all, belongs in Maryland." Moreover, the purposes of the statute of limitations were fulfilled under the circumstances, because all defendants received adequate notice of the claims through the timely action in federal court. *See Puetz v. Spectrum Health Hosps.*, 919 N.W.2d at 447-48.[14]

In summary, we see no error in the circuit court's conclusion that 28 U.S.C. § 1367(d) tolled the period of limitations for the shareholders' claims for breach of fiduciary duty while those claims were pending in federal district court and for 30 days after that court's dismissal of those claims. By operation of this tolling provision, the

---

[14] At oral argument, the defendants also theorized that a plaintiff should not gain the benefit of 28 U.S.C. § 1367(d) if a federal district court dismisses an action based on what the defendants call "procedural inadequacies" in the pleadings. This theory lacks support in *Holt v. County of Orange* or other case law. In any event, it is incorrect to suggest that the district court's forum non conveniens determination, enforcing the forum-selection clauses invoked by the defendants, means that there was some "inadequac[y]" in the pleadings. *Cf. Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013) (explaining that "a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of" provisions governing venue).

breach-of-fiduciary-duty claims were timely in the circuit court. The defendants were not entitled to a dismissal based on the statute of limitations.[15]

## II.    <u>Pre-Suit Demand Requirement and the Futility Exception</u>

As the central issue in this appeal, the shareholders contend that the circuit court erred when it dismissed the derivative action on the ground that the shareholders failed to make a pre-suit demand upon the Board. The shareholders argue that their allegations were sufficient to establish that they were excused from the demand requirement.

This Court reviews the grant of a motion to dismiss, without deference, to determine whether the ruling was legally correct. *Oliveira v. Sugarman*, 451 Md. 208, 219 (2017). When evaluating a motion to dismiss, courts "'must assume the truth of all relevant and material facts that are well pleaded and all inferences which can reasonably be drawn from those pleadings.'" *Wheeling v. Selene Fin. LP*, 473 Md. 356, 374 (2021) (quoting *Barclay v. Castruccio*, 469 Md. 368, 373-74 (2020)). Nevertheless, "ambiguity or uncertainty in the allegations" generally "must be construed against the pleader." *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 335 (2009). "Mere conclusory charges that are not factual allegations need not be considered." *Id.* An action should be dismissed where "the allegations and permissible inferences, if true, still fail" to establish that the plaintiff is entitled to relief. *Oliveira v. Sugarman*, 451 Md. at 219-20.

---

[15] No party has addressed the potential effect of the administrative orders through which Maryland tolled the statutes of limitations for civil actions while courts were closed to the public as an emergency measure in response to the COVID-19 pandemic. *See generally Murphy v. Liberty Mut. Ins. Co.*, 478 Md. 333, 350-62 (2022); *Matter of Hosein*, 484 Md. 559, 563-69 (2023) (per curiam). Accordingly, our opinion does not analyze that issue.

Under the Maryland General Corporation Law, "[a]ll business and affairs of a corporation" are "managed by or under the direction of a board of directors."  Md. Code (1975, 2014 Repl. Vol.), § 2-401(a) of the Corporations and Associations Article (Corps. & Ass'ns).  Except for certain powers expressly reserved to stockholders, "[a]ll powers of the corporation" are "exercised by or under the authority of the board of directors[.]"  Corps. & Ass'ns § 2-401(b).  "Shareholders are not ordinarily permitted to interfere in the management of the company; they are the owners of the company but not its managers."  *Werbowsky v. Collomb*, 362 Md. 581, 599 (2001).  Like other business decisions, the decision of whether a corporation should pursue litigation ordinarily rests with the directors or officers appointed by the directors.  *Id.*  Thus, as a general rule, "'an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder [even] though the injury may incidentally result in diminishing or destroying the value of the stock.'"  *Eastland Food Corp. v. Mekhaya*, 486 Md. 1, 37 (2023) (quoting *Waller v. Waller*, 187 Md. 185, 189 (1946)).

Shareholders ordinarily may not use the courts to override business decisions made by the directors of the corporation.  *See Boland v. Boland*, 423 Md. 296, 328 (2011).  Courts recognize a "'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *Id.* (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).  This principle, known as the business judgment rule, is codified in section 2-405.1 of the Corporations and Associations

Article.  Under this provision, directors owe the corporation a duty to "act: (1) [i]n good faith; (2) [i]n a manner the director reasonably believes to be in the best interests of the corporation; and (3) [w]ith the care that an ordinarily prudent person in a like position would use under similar circumstances."  Corps. & Ass'ns § 2-405.1(c).  "An act of a director of a corporation is presumed to be in accordance" with this standard of conduct.  Corps. & Ass'ns § 2-405.1(g).  Directors are immune from liability for acts taken in accordance with this standard.  Corps. & Ass'ns § 2-405.1(e).

A derivative action is "'an extraordinary equitable device'" through which shareholders, in certain circumstances, may "'enforce a corporate right that the corporation failed to assert on its own behalf.'"  *Mona v. Mona Elec. Grp., Inc.*, 176 Md. App. 672, 698 (2007) (quoting *Werbowsky v. Collomb*, 362 Md. at 599).  The derivative form of action "is essentially a suit by the shareholders to compel the corporation to sue and, simultaneously, a suit by the corporation" against one or more defendants.  *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 197 Md. App. 586, 610 (2011) (citing *Werbowsky v. Collomb*, 362 Md. at 599).  "Because a derivative lawsuit intrudes upon the board of directors' managerial control of the corporation, shareholders are required to first make a demand that the board take action before initiating a derivative suit[,]" unless that requirement is lawfully excused.  *Oliveira v. Sugarman*, 451 Md. at 223 (citing *Werbowsky v. Collomb*, 362 Md. at 600).  The purpose of the demand requirement "'is to afford the directors an opportunity to exercise their reasonable business judgment'" to decide whether the corporation should bring suit.  *Id.* (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991)).

38

"Once demand is made, the corporation's board of directors must conduct an investigation into the allegations in the demand and determine whether pursuing the demanded litigation is in the best interests of the corporation." *Shenker v. Laureate Educ., Inc.*, 411 Md. at 344. Commonly, the board will appoint a special litigation committee of independent directors to decide whether the corporation should pursue the litigation. *Boland v. Boland*, 423 Md. at 332. If the board refuses the demand, the shareholder may bring "a 'demand refused' action." *Shenker v. Laureate Educ., Inc.*, 411 Md. at 344 (quoting *Bender v. Schwartz*, 172 Md. App. 648, 666 (2007)). "The corporate board's decision to deny the litigation demand receives the same business judgment rule presumption as any other board decision." *Oliveira v. Sugarman*, 451 Md. at 223. Thus, in order to establish the right to proceed in the derivative action, the shareholder must overcome the presumption that the decision was the product of business judgment. *Id.*

"Traditionally, another way" for a shareholder to pursue a derivative action "was to bring a 'demand excused' action." *Boland v. Boland*, 423 Md. at 331 n.25. The most authoritative opinion concerning this narrow exception to the demand requirement under Maryland law is *Werbowsky v. Collomb*, 362 Md. 581 (2001).

In *Werbowsky*, the Court explained that in Maryland, as in most other states, courts developed a pre-suit demand requirement for derivative actions, subject to the exception "'that no such prior demand is required when it would be futile.'" *Werbowsky v. Collomb*, 362 Md. at 601-02 (quoting *Parish v. Maryland & Virginia Milk Producers Ass'n*, 250 Md. 24, 82 (1968)). The Court recognized a nationwide trend over the preceding decades "to enforce more strictly the requirement of pre-suit demand and at

39

least to circumscribe, if not effectively eliminate, the futility exception." *Id.* at 607.

In particular, the Court explained, both the American Bar Association (ABA) and the American Law Institute (ALI) had proposed model legislation that would eliminate the futility exception. *Id.* at 611-14. Recommending a universal demand requirement, the ABA and ALI emphasized the purposes served by a demand, the relatively minimal burden of making a demand, and the costs of threshold litigation concerning whether demand was excused. *Id.* at 612-13. Influenced by those proposals, many states had established a universal demand requirement by legislation, while one state had created a universal demand requirement by judicial decision. *Id.* at 614-15. The Court announced: "There is much to be said for the ABA/ALI approach, but . . . we are not prepared, at this point, to engraft it as part of our common law." *Id.* at 617. The Court reasoned that, because those proposals represented "a radical departure from [Maryland's] current common law," those proposals should be enacted, if at all, through the legislative process rather than through litigation. *Id.* at 618.

The *Werbowsky* Court nevertheless expressed substantial agreement with the policy of requiring demand for nearly every derivative action. The Court stressed that the "demand requirement *is* important." *Id.* (emphasis in original). The Court stated that the "control of corporate affairs" by directors "should not be impinged based on non-specific or speculative allegations of wrongdoing." *Id.* at 619. The Court also stated that neither directors nor corporations "should . . . be put unnecessarily at risk by minority shareholders bent simply on mischief, who file derivative actions not to correct abuse as much to coerce nuisance settlements." *Id.* The Court "agree[d] . . . with the ABA/ALI

40

that, in most cases, a pre-suit demand on the directors is not an onerous requirement." *Id.*

The Court stated that a pre-suit demand "gives the directors—even interested, non-independent directors—an opportunity to consider, or reconsider, the issue in dispute."

*Id.* The Court opined that the "futility exception essentially eliminates any chance at meaningful pre-litigation alternative dispute resolution[,]" and "virtually assures extensive and expensive judicial wrangling over a peripheral issue that may result in preliminary determinations regarding director culpability that, after trial on the merits, turn out to be unsupportable." *Id.*

Although the *Werbowsky* Court declined to eliminate the futility exception, the Court "adopted" a new "standard" for assessing futility. *Id.* at 622. The Court declared that demand should not be excused "simply because a majority of the directors approved or participated in some way in the challenged transaction or decision, or on the basis of generalized or speculative allegations that they are conflicted or are controlled by other conflicted persons, or because they are paid well for their services as directors, were chosen as directors at the behest of controlling stockholders, or would be hostile to the action." *Id.* at 618. The Court concluded:

> We adhere, for the time being, to the futility exception, but, consistent with what appears to be the prevailing philosophy throughout the country, regard it as a very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

*Id.* at 620.

41

The Court has explained that "[t]his exception to the demand requirement is quite narrow and does not encompass every instance in which a majority of the board of directors is interested." *Oliviera v. Sugarman*, 451 Md. at 229. "A director that expects to derive a personal benefit from a corporate transaction—and is therefore not disinterested—is not necessarily 'so personally and directly conflicted or committed to the decision in dispute that [the director] cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.'" *Id.* (quoting *Werbowsky v. Collomb*, 362 Md. at 620). In other words, the demonstrated conflict or commitment should be so substantial that it would "cause[] [the directors] to reject a demand for [a] reason not within the ambit of the business judgment rule." *Werbowsky v. Collomb*, 362 Md. at 622.

In sum, although the *Werbowsky* opinion did not "yet . . . close the door" on the futility exception (*Boland v. Boland*, 423 Md. at 331 n.25), the Court substantially narrowed the scope of the exception. *See Oliveira v. Sugarman*, 226 Md. App. 524, 542 n.11 (2016) (stating that "demand is excused only in very extreme circumstances"), *aff'd*, 451 Md. 208 (2017); *Danielewicz v. Arnold*, 137 Md. App. 601, 632-33 (2001) (stating that the futility exception "should not be lightly accepted"); *see also Gordon v. Sznewajs*, 357 F. Supp. 3d 1009, 1019 n.9 (C.D. Cal. 2018) (stating that "[t]he Maryland demand requirement is strictly construed and frequently leads to the dismissal of derivative actions") (citation and internal quotation marks omitted). Under *Werbowsky*, "the demand requirement . . . is near universal[.]" James J. Hanks, Jr., *Maryland Corporation Law* § 7.22(C), at 7-90 (2d ed. 2020). Courts applying the *Werbowsky* standard "have

42

rarely held demand on the board futile." *Id.* § 7.22(C), at 7-81 n.309. In the present case, the shareholders have cited no published opinion in which any court applying the *Werbowsky* standard determined that a demand upon the board of directors would have been futile.[16]

Although the defendants contend that this derivative action does not qualify under the narrow futility exception, the defendants also argue that it is unnecessary for this Court to address the futility issue. The defendants observe that, a few weeks after the circuit court dismissed the derivative action, the shareholders sent a demand letter asking the Board to seek recovery on behalf of the Funds for the alleged breaches of fiduciary duty by Tortoise and the Directors. A few months later, counsel for the Demand Review Committee notified the shareholders that the Committee had rejected the litigation demand. Shortly thereafter, the shareholders initiated a separate action in the Circuit Court for Baltimore City, reasserting their derivative claims and alleging that the Board wrongfully refused the demand.

In this appeal, the defendants contend that, by making a litigation demand after the

---

[16] In their appellate brief, the shareholders cite *Trasatti v. Trasatti*, 2018 WL 2750266 (Md. Ct. Spec. App. June 7, 2018) (unreported). An unreported opinion of this Court may be cited as persuasive authority only if it was "issued on or after July 1, 2023[,]" and "only if no reported authority adequately addresses an issue before the court." Md. Rule 1-104(a)(2)(B). Because the cited opinion was issued before July 2023, it does not constitute persuasive authority. *See* Md. Rule 1-104(a) (2022). In any event, the opinion cited by the shareholders is inapposite. "Unlike in *Werbowsky* (and many shareholder derivative actions), where there is a corporate board comprised of interested and disinterested directors," the cited case involved a partnership "controlled entirely by" two general partners alleged to have engaged in self-dealing to the detriment of the limited partners. *Trasatti v. Trasatti*, 2018 WL 2750266, at *12.

dismissal of their derivative action, the shareholders have "moot[ed]" their claim that they were excused from the demand requirement. According to the defendants, any decision concerning demand futility would amount to an impermissible "advisory opinion." The defendants argue this Court should either dismiss the appeal on the ground of mootness or affirm the judgment because the Board has already rejected the demand.

In reply, the shareholders argue that their demand "was not a waiver" of their allegations "that the Board cannot fairly consider a demand[.]" The shareholders assert that, when they made the demand, they "did not concede that the Board members were capable of impartially considering a demand in good faith." The shareholders assert that they "made the demand solely to preserve the Funds' rights pending the outcome of this appeal."

"A question presented on appeal is moot 'if, at the time it is before the court, there is no longer any existing controversy between the parties, so that there is no longer an effective remedy which the court can provide.'" *Sugarloaf All., Inc. v. Frederick County*, 265 Md. App. 199, 227 (2025) (quoting *Syed v. Lee*, 488 Md. 537, 578 (2024)) (further citation and quotation marks omitted). "In other words, an issue is moot where 'past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might enter would be without effect.'" *Id.* (quoting *La Valle v. La Valle*, 432 Md. 343, 351 (2013)) (further citation and quotation marks omitted). Using these formulations, it is difficult to envision how the issue of whether the shareholders are excused from the demand requirement in this action might be characterized as moot.

44

As the basis for their mootness argument, the defendants rely on *Stotland v. GAF Corp.*, 469 A.2d 421 (Del. 1983) (per curiam). In that case, after a trial court had dismissed a derivative action, one of the plaintiffs made a litigation demand upon the board of directors. *Id.* at 422. At the same time, the plaintiffs also appealed from the dismissal. *Id.* The Supreme Court of Delaware concluded that the issues presented in the appeal "ha[d] been rendered moot by the demand made" upon the board. *Id.* at 423. The court stated that "the effect of such demand is to place control of the litigation in the hands of the . . . directors." *Id.* at 422. The court relied on its own precedent holding "that once a demand has been made, absent a wrongful refusal, the stockholders' ability to initiate a derivative suit is terminated." *Id.* (citing *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784-86 (Del. 1981)). The court further concluded that, because the board had not yet considered the demand, "[a]ny claim of a wrongful refusal by [the directors] to consider the demand" was premature. *Id.* at 423. The court dismissed the appeal and remanded the case with instructions for the trial court to retain jurisdiction pending the board's decision concerning the demand. *Id.*

Although the *Stotland* opinion stated that the issue of whether demand was excused becomes "moot" when a shareholder makes a demand, subsequent Delaware opinions have treated a shareholder's demand as a waiver of the claim that demand was excused. In *Spiegel v. Buntrock*, 571 A.2d 767 (Del. 1990), the court stated that "[a] shareholder who makes a demand can no longer argue that demand is excused." *Id.* at 775 (citing *Stotland v. GAF Corp.*, 469 A.2d at 423). According to the court: "By making a demand, a stockholder tacitly acknowledges the absence of facts to support a

finding of futility." *Id.* A later opinion explained this holding as follows: "If a demand is made, the stockholder has spent one . . . 'arrow' in the 'quiver.' The spent 'arrow' is the right to claim that demand is excused." *Grimes v. Donald*, 673 A.2d 1207, 1218-19 (Del. 1996). In other words, under Delaware law, "[i]f the stockholders make a demand, . . . they are deemed to have waived any claim they might otherwise have had that the board cannot independently act on the demand." *Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 74 (Del. 1997).

As the defendants acknowledge, Maryland appellate courts "have not yet considered the effect of a post-suit demand" on a pending action alleging that demand was excused. Nevertheless, this Court favorably discussed the Delaware Supreme Court's waiver holding in *Bender v. Schwartz*, 172 Md. App. 648 (2007). In that case, plaintiffs appealed after a trial court rejected their claim that two corporate boards had wrongfully refused a litigation demand. *Id.* at 663. Describing the standards applicable to the action, this Court stated: "By making a demand, the shareholder(s) 'are deemed to have waived any claim they might otherwise have had that the board *cannot independently act* on the demand.'" *Id.* at 666 (emphasis in original) (quoting *Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d at 74); *see also Mona v. Mona Elec. Grp., Inc.*, 176 Md. App. 672, 700 (2007) (quoting *Bender v. Schwartz*, 172 Md. App. at 666). The Court further stated: "To the extent [the plaintiffs] are now claiming that the [special demand committees] were not capable of acting independently, the claim was waived by making demands on the boards." *Bender v. Schwartz*, 172 Md. App. at 667 n.2 (citing *Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d at 74).

46

As the defendants point out, at least one court has interpreted *Bender v. Schwartz* as an endorsement of Delaware law concerning the effect of a demand. *See In re Regions Morgan Keegan Sec., Derivative, ERISA Litig.*, 742 F. Supp. 2d 917, 923 (W.D. Tenn. 2010) (citing *Bender v. Schwartz* for the proposition that "Maryland law follows Delaware law and prohibits a party from simultaneously pleading that demand was made and that it is excused"). Nevertheless, in a case decided after *Bender v. Schwartz*, Maryland's highest court cast doubt on the notion that, whenever the shareholder makes a demand, the shareholder necessarily concedes that the board is capable of acting independently on the demand.

In *Boland v. Boland*, 423 Md. 296 (2011), an appeal concerning the grant of summary judgment in a demand refusal action, the Court commented on the "narrowing" of the futility exception. *Id.* at 331 n.25. The Court observed: "Under *Werbowsky*, a demand on the board may be required, or at least advisable, even though the board itself may not be in a position to render the decision itself, due to the nature of the allegations or the existence of adverse interests." *Id.* The Court further noted: "Indeed, one justification for the expanded demand requirement is to give the corporation an opportunity to engage [a special litigation committee]." *Id.* The Court concluded:

> Because courts have encouraged derivative plaintiffs to file such a demand, including in cases where the Board may find it advisable to appoint [a special litigation committee], *see Werbowsky*, 362 Md. at 619, . . . it is clear that the derivative plaintiff may continue to contest the independence of the board members after filing such a demand, and should not be prejudiced by that choice.

*Id.*

To our understanding, the *Boland* Court reasoned that, because Maryland's demand requirement has become so narrow, and because it has become common practice to refer demands to a special committee, derivative plaintiffs are either required to or can reasonably be expected to make a demand even if they firmly believe that the directors themselves cannot fairly consider the demand. *Boland* then establishes that, under Maryland law, a "derivative plaintiff may continue to contest the independence of the board members after" making a demand "and should not be prejudiced by th[e] choice" to make a demand. *Id.* These propositions are in some tension with the statement that, "[b]y making a demand, the shareholder(s) 'are deemed to have waived any claim they might otherwise have had that the board *cannot independently act* on the demand.'" *Bender v. Schwartz*, 172 Md. App. at 666 (emphasis in original) (quoting *Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d at 74).

In light of *Boland*, we will proceed on the assumption that, when the shareholders made a demand upon the Board, the shareholders did not waive their previously asserted claim that demand was excused. Accordingly, we decline to dismiss the appeal on the ground of mootness.

In this appeal, the shareholders contend that the circuit court erred when it determined that the shareholders were not excused from the demand requirement. The shareholders argue that the Court misconstrued and misapplied the *Werbowsky* standard and failed to assume the truth of all factual allegations and reasonable inferences drawn from those allegations. The shareholders argue that they "alleged particularized facts demonstrating that a majority of the Board could not be reasonably expected to consider a

48

demand in good faith and within the ambit of the business judgment rule."

As their most prominent argument in support of futility, the shareholders assert that the Directors "would be conflicted in considering a demand" because they "would face potential personal liability" for the alleged damages. The shareholders assert that, by law, directors cannot be indemnified for liability resulting from recklessness or gross negligence. The shareholders note that their complaint included allegations of reckless or grossly negligent conduct by the Directors. The shareholders also note that the alleged damages, based on investment losses exceeding $1 billion, are considerable. The shareholders argue that "the prospect of material (to put it mildly) personal liability" certainly would affect the Directors' "willingness to consider, in good faith, a demand to pursue litigation against themselves."

As the defendants point out, courts applying the *Werbowsky* standard have concluded that naming directors as defendants, establishing that the directors face the potential for personal liability, or establishing that the directors may lack insurance coverage will not suffice to demonstrate that demand would be futile. *See Gomes v. American Century Cos.*, 710 F.3d 811, 817 (8th Cir. 2013) (rejecting argument that investment fund fiduciaries "could not fairly consider a demand because they were responsible for the [f]unds' illegal actions and w[ould] be liable if [the] claim succeed[ed]"); *Weinberg ex rel. BioMed Realty Trust, Inc. v. Gold*, 838 F. Supp. 2d 355, 359-61 (D. Md. 2012) (rejecting argument that demand was futile based on allegation that the directors were "interested in the outcome of the litigation because each one face[d] a substantial likelihood of liability"); *Seidl v. American Century Cos.*, 713 F.

49

Supp. 2d 249, 260-61 (S.D.N.Y. 2010) (concluding that "demand is not excused under Maryland law based on a plaintiff's speculation" that the directors "would be forced to sue themselves" or based on a "conclusory allegation that [the] directors w[ould] be exposed to civil and criminal liability"), *aff'd*, 427 Fed. App'x 35 (2d Cir. 2011); *In re Regions Morgan Keegan Sec., Derivative, ERISA Litig.*, 694 F. Supp. 2d 879, 887-88 (W.D. Tenn. 2010) (concluding that allegations establishing the "lack of insurance coverage" for the directors or allegations that the directors "might have to sue themselves or other directors" are not enough to establish futility).

"'It is no answer to say that demand is necessarily futile because . . . the directors would have to sue themselves, thereby placing the conduct of the litigation in hostile hands[.]'" *Oliviera v. Sugarman*, 226 Md. App. at 544 (quoting *Brehm v. Eisner*, 746 A.2d 244, 257 n.34 (Del. 2000)). As one court has explained, the purposes of the demand requirement "would be nullified in every shareholders' derivative suit that named directors as defendants if simply naming them as parties provided [an] excuse for pre-suit demand." *Weinberg ex rel. BioMed Realty Trust, Inc. v. Gold*, 838 F. Supp. 2d at 360-61. Indeed, "[n]o Maryland court has held after *Werbowsky* that demand was excused because the directors participated in the transaction giving rise to the claim and might be personally liable if the claim succeeded." *Gomes v. American Century Cos.*, 710 F.3d at 817. This outcome is consistent with the directive that demand is not excused "simply because a majority of the directors approved or participated in some way in the challenged transaction or decision[.]" *Werbowsky v. Collomb*, 362 Md. at 618.

The shareholders seek to differentiate their action from this line of authority by

50

asserting that their allegations against the directors are "extensive" and that the potential for liability here is "significant" for the directors. The relevant case law does not support a distinction between actions with a substantial potential of personal liability for directors, as opposed to the mere potential of some personal liability. Moreover, creating such a distinction would require or invite courts to evaluate the merits of the underlying claims against the directors. Yet the *Werbowsky* formulation is designed to "focus[] the court's attention on the real, limited, issue—the futility of a pre-suit demand—and avoid[] injecting into a preliminary proceeding issues that go more to the merits of the complaint[.]" *Id.* at 620. Thus, "*Werbowsky* implicitly disallows consideration of the merits of the case in analyzing demand futility." *Weinberg ex rel. BioMed Realty Trust, Inc. v. Gold*, 838 F. Supp. 2d at 361. Courts need not and should not evaluate "whether a director faces a likelihood of liability" when deciding the discrete issue of whether demand would be futile. *Gordon v. Sznewajs*, 357 F. Supp. 3d at 1019 n.9 (rejecting argument that shareholder could establish futility by alleging that directors faced a substantial likelihood of liability).

The shareholders point to pre-*Werbowsky* opinions in support of their position that potential personal liability should be considered when assessing whether demand upon the directors would be futile. The shareholders assert that it is "useless" to require demand where "the directors, or officers of a corporation having the authority to direct its litigation, are themselves guilty of the wrong complained of" and where acceding to the demand would require "the perpetrators of the wrong to conduct a litigation against themselves." *Davis v. Gemmell*, 70 Md. 356, 376 (1889). The shareholders also cite

*Parish v. Maryland and Virginia Milk Producers Ass'n*, 250 Md. 24, 83-84 (1968), in which the Court determined that shareholders were excused from making a demand where the shareholders stated causes of action against the directors and alleged that the majority of the directors had participated in the alleged wrongdoing.

The pre-*Werbowsky* opinions cited by the shareholders are no longer controlling. The *Werbowsky* opinion thoroughly examined the opinions cited by the shareholders (*see Werbowsky v. Collomb*, 362 Md. at 604, 606-07), but ultimately established a more demanding standard for futility. *See Danielewicz v. Arnold*, 137 Md. App. at 630 (concluding that "any liberal approach" to demand futility "suggested in *Parish* has certainly become more stringent as a result of the [Court's] decision in *Werbowsky*"). The *Werbowsky* opinion effectively "repudiated" the prior case law under which a shareholder could establish futility by alleging that a majority of the directors participated in the alleged wrongdoing and might be personally liable. *Gomes v. American Century Cos.,* 710 F.3d at 817. Even if the potential for personal liability on the part of the directors might have been enough under the pre-*Werbowsky* standards, it no longer supports a finding of futility.

In addition to arguing that the Directors are "conflicted" because they face a risk of personal liability, the shareholders argue that the Directors are "committed" to decisions that the shareholders dispute. As the shareholders recognize, the *Werbowsky* formulation focuses on a specific type of commitment. It recognizes that demand might be considered futile where the allegations clearly demonstrate that the majority of directors are "so personally and directly conflicted or *committed to the decision in dispute*

52

that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky v. Collomb*, 362 Md. at 620 (emphasis added).

In their arguments, the shareholders provide little clarity on which decisions are in dispute in this action. The pleadings call into dispute the decisions that allegedly caused the Funds' downturn in early 2020: the Board's alleged decisions to permit Tortoise to engage in reckless use of leverage as the investment advisor for the Funds. In arguing that the Directors have demonstrated their "commitment" to disputed decisions, the shareholders focus on "after-the-fact" decisions, i.e., decisions made after the value of the Funds collapsed in early 2020. The shareholders argue that the Directors' "post-crash conduct" demonstrates that they are "irrevocably committed to avoiding accountability for themselves or Tortoise for the reckless mismanagement and oversight failures that caused the Funds' losses."

As purported proof of this type of commitment, the shareholders assert that, after the value of the Funds declined in early 2020, the Board "repeatedly rehired" Tortoise as the investment advisor for the Funds and "repeatedly stated" that Tortoise's performance justified renewal of the contracts. In our assessment, this conduct fails to demonstrate any kind of irrevocable commitment. Like the decision to engage Tortoise before 2020, the Board's decision to renew the advisory contracts in 2020 was a business decision entrusted to the Board. The Board's statements that it considered the "quality" of Tortoise's services, including Tortoise's "handling of the leverage target," are at least facially consistent with an exercise of business judgment. Virtually any time a corporate

53

board announces a business decision, one can expect the board to make favorable statements about its own decision. Statements of this kind demonstrate the ordinary degree of support that one would expect for any decision by a corporate board, not the type of extraordinary commitment that might establish that the board is incapable of considering or reconsidering a disputed matter.

The shareholders take issue with the Board's decisions to retain Tortoise as investment advisor for the Funds in 2020 and thereafter. The shareholders characterize Tortoise's management of the Funds as "egregious" and assert that the Board's evaluation of Tortoise went "against all objective facts[.]" Because these assertions involve the merits of the underlying claims regarding the Funds' collapse in value, they cannot be considered when evaluating whether demand would be futile. *See Weinberg ex rel. BioMed Realty Trust, Inc. v. Gold*, 838 F. Supp. 2d at 361; *see also Gordon v. Sznewajs*, 357 F. Supp. 3d at 1019 n.9.

The shareholders assert that the Directors also demonstrated their commitment to the disputed decisions by enacting amended bylaws in October 2020. According to the pleadings, the amended bylaws restricted a shareholder's ability to nominate new directors and diminished shareholder voting rights in violation of the Investment Company Act of 1940. The shareholders acknowledged that, at the time of that decision, the Board announced that the purpose of the amended bylaws "was to protect 'long-term value for stockholders[.]'" The shareholders nevertheless alleged, in a conclusory fashion, that the true purpose of the amended bylaws was to frustrate potential efforts to replace the Directors after the value of the Funds collapsed earlier that year.

54

The shareholders' allegations concerning the amended bylaws are too speculative to "clearly demonstrate, in a very particular manner," that the Directors are committed to a decision in dispute. *Werbowsky v. Collomb*, 365 Md. at 620. Even if one or more provisions of the amended bylaws violated federal law, the decision to enact the amended bylaws is immaterial unless it has some particular connection to the decisions disputed in this action. *See Gordon v. Sznewajs*, 357 F. Supp. 3d at 1018 (explaining that, to satisfy the *Werbowsky* standard, the allegations must demonstrate a director's "commitment not to 'wrongdoing' generally, but to 'the decision in dispute'"). As described in the pleadings, the amended bylaws were provisions of general applicability, without any direct connection to disputed decisions involving Tortoise, the use of leverage by the Funds, or a potential suit against Tortoise. Although the shareholders theorize that the Directors amended the bylaws "to insulate themselves and Tortoise from shareholders," the shareholders fail to identify particularized facts in support of their theory. This sort of "conjecture and speculation" is insufficient to meet the *Werbowsky* standard. *Danielewicz v. Arnold*, 137 Md. App. at 631.

The shareholders also assert that the Board demonstrated a "commitment to do nothing about the challenged conduct" by failing to pursue legal action after the Funds declined in value in early 2020. The shareholders argue that the Board's failure to "investigate or evaluate the potential claims" demonstrates the Directors' "commitment to shielding themselves and Tortoise from shareholder accountability[.]"

Contrary to these arguments, board inaction is an unremarkable factual allegation in a derivative complaint. By definition, a shareholder derivative action is an attempt to

55

assert a right that the corporation failed to assert on its own behalf. *Werbowsky v. Collomb*, 362 Md. at 599. Allegations that directors did not "s[eek] recovery of the amounts" that the shareholders "believe[] ought to be recovered[,]" or that directors "exhibited antipathy" towards a potential lawsuit by "failing to rescind" a disputed decision when given the opportunity to do so, are not sufficient to excuse demand. *Weinberg ex rel. BioMed Realty Trust, Inc. v. Gold*, 838 F. Supp. 2d at 362. Here, the fact that the Directors "took no legal action" for more than two years after the Funds declined in value "does not suggest that the directors were so committed to the decision not to bring suit that they could not respond in good faith to a demand." *Seidl v. American Century Cos.*, 713 F. Supp. 2d at 259.

The shareholders nevertheless argue that the Board's inaction is notable because, according to the shareholders, the Directors "were aware of potential claims arising out of the Funds' collapse" long before the derivative suit. The shareholders point to their allegation that, in June 2021, they "served inspection demands seeking documents and information regarding the Funds' mismanagement and collapse." The shareholders also point to their allegation that, in July 2022, a third-party investment fund manager "sent a letter to the Board requesting to discuss the potential for purchasing the Funds' claims against Tortoise in exchange for a cash payment to the Funds and a portion of the ultimate recovery."

Even if these two requests were enough to inform the Board of potential claims, neither type of request would require the Board to make an investigation. Under Maryland law, a corporate board has an obligation to conduct an investigation once it

receives a litigation demand from a shareholder. *See Boland v. Boland*, 423 Md. at 330; *Bender v. Schwartz*, 172 Md. App. at 666. Neither a document inspection request from a shareholder nor a third-party solicitation to discuss the potential assignment of claims can be viewed as the equivalent of a shareholder litigation demand. It would be unreasonable to draw adverse inferences from the Board's failure to conduct an investigation that the Board had no obligation to conduct.

Finally, the shareholders argue that the Directors demonstrated their commitment to disputed decisions through their hostile response to the shareholders' first derivative action in federal court. The shareholders assert that the Directors "caused the Funds to seek dismissal" of the federal action and that the Board "publicly" stated in its filings in that action "that the Funds' claims are 'meritless[.]'"

Generally, courts have interpreted the *Werbowsky* opinion to mean that demand should not be excused based on a showing that the directors are hostile to the action. *See Gordon v. Sznewajs*, 357 F. Supp. 3d at 1021; *Seidl v. American Century Cos.*, 713 F. Supp. 2d at 259-60. Moreover, courts applying *Werbowsky* have consistently concluded that shareholders may not use a defendant's response to the derivative suit to demonstrate that a demand would have been futile before that suit. "The futility of pre-suit demand should not be analyzed based on post-filing circumstances." *Weinberg ex rel. BioMed Realty Trust, Inc.*, 838 F. Supp. 2d at 360. "The futility of making a demand must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight." *Seidl v. American Century Cos.*, 713 F. Supp. 2d at 259. "If demand was not futile when the complaint was filed, then the shareholder had no right to initiate the

57

action." *Gomes v. American Century Cos.*, 710 F.3d at 817. Thus, courts ordinarily do not "look past the date on which" a shareholder filed a derivative action "to determine whether demand was excused" in that action. *Id.*

The shareholders identify no reason for this Court to depart from the prevailing approach of measuring futility at the time of suit. The present circumstances are somewhat atypical because the shareholders initiated two separate actions. The shareholders first filed a derivative action in federal district court on August 18, 2022, and, after the district court dismissed that action on inconvenient forum grounds, refiled the same claims in the Circuit Court for Baltimore City on May 12, 2023. Despite the formal separation between the two actions, the essential allegations in both complaints are substantively identical. Accordingly, we conclude that the more relevant filing date for the purposes of assessing futility is the date of the first derivative suit. Under the circumstances, it would elevate form over substance to rely on the defendants' responses to the initial action to establish the futility of demand in the second action.

Considered in their totality, the allegations in this case do not satisfy the "very limited exception" to the demand requirement recognized in *Werbowsky v. Collomb*, 362 Md. at 620. Most of the allegations offered to show futility (allegations about potential personal liability, allegations concerning the merits of the underlying claims, allegations that lack the requisite particularity, and allegations about post-filing circumstances) deserve minimal or no weight. The remaining allegations do little more than confirm that the Directors continued to have a favorable opinion of Tortoise as the investment advisor for the Funds after the downturn in early 2020. These allegations may or may not have

58

been enough to show that a shareholder demand was unlikely to succeed. But "futility" in this context is not the same thing as a "failure." *Kamen v. Kemper Fin. Servs., Inc.*, 939 F.2d 458, 462 (7th Cir. 1991) (applying Maryland law). "A demand is 'futile'" where "the directors' minds are closed to argument." *Id.*[17] The factual allegations here do not clearly demonstrate that the Directors were so conflicted or committed that they would reject a demand for reasons not within the scope of the business judgment rule.

In sum, we conclude that the allegations made by the shareholders do not "clearly demonstrate, in a very particular manner" that "a majority of the directors are so personally and directly conflicted or committed to the decision[s] in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky v. Collomb*, 362 Md. at 620. The circuit court's decision to dismiss the amended complaint on account of the shareholders' failure to make a pre-suit demand was correct.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

---

[17] Although the *Kamen* case predates *Werbowsky*, the Court expressly stated that it "agreed with much of what the Seventh Circuit court said in *Kamen*" when it formulated the standards for the futility in *Werbowsky v. Collomb*, 362 Md. at 618.